616 F.2d 1238
 80-1 USTC P 9290, 2 Employee Benefits Ca 1076
 Henry BUCZYNSKI, Alex Borusovic, and other Retirees
similarly situated, Appellees,
v.
The GENERAL MOTORS CORPORATION, Appellant,
State of New Jersey, Intervenor.
Joseph ALESSI, Raymond Buisson, Stephen Michalski, Charles
Repka, Helen Vogt and T. Edward White, Appellees,
v.
RAYBESTOS-MANHATTAN, INC., and Raybestos-Manhattan, Inc.
Employee Retirement Plan, jointly, severally or in
the alternative, Appellants,
State of New Jersey, Intervenor.
 Nos. 79-1534, 79-1668.
 United States Court of Appeals,
Third Circuit.
 Argued Jan. 8, 1980.
Decided Feb. 15, 1980.
 
 Marc C. Gettis (argued), Lester Weiner, Weiner, Staubach, Edelson & Hopmayer, Roselle Park, N. J., for appellees Buczynski and Borusovic.
 Michael S. Scarola (argued), Gelman & Gelman, Paterson, N. J., for appellees Alessi, Buisson, Michalski, Repka, Vogt and White.
 Michael S. Bokar (argued), Deputy Atty. Gen., John J. Degnan, Atty. Gen. of New Jersey, Stephen Skillman, Asst. Atty. Gen., Trenton, N. J., for intervenor State of New Jersey.
 J. Richard Lauver, Charles R. Smith, J. Michael Ewing, Kirkpatrick, Lockhart, Johnson & Hutchison, Pittsburgh, Pa., for Shenango, Inc. as amicus curiae.
 
 
 1
 James T. Carney, Pittsburgh, Pa., for U. S. Steel Corp. as amicus curiae.
 
 
 2
 William R. Caroselli, McArdle, Caroselli, Spagnolli & Beachler, Pittsburgh, Pa., for Gargon, Doumont, Milanovich, Banks, Barna, Miller, Zihol, as amicus curiae.
 
 
 3
 Carpenter, Bennett & Morrissey, Laurence Reich (argued), John C. Heavey, Newark, N. J., for appellant General Motors Corp.
 
 
 4
 Warren J. Casey (argued), Pitney, Hardin & Kipp, Arnold S. Cohen, Morristown, N. J., for appellants Raybestos-Manhattan, Inc.
 
 
 5
 M. Carr Ferguson, Asst. Atty. Gen., William A. Friedlander, Michael J. Roach, Tax Div., Dept. of Justice, Washington, D. C., Robert J. Del Tufo, U. S. Attorney, Newark, N. J., for the United States as amicus curiae.
 
 
 6
 William L. Standish, William H. Powderly, III, Patrick W. Ritchey, Charles R. Herpich, Jr., Reed, Smith, Shaw & McClay, Pittsburgh, Pa., for Crucible Inc., Jones & Laughlin Steel Corp., Mesta Machine Company, Pullman-Standard and Wheeling-Pittsburgh Steel Corp. as amicus curiae.
 
 
 7
 Paul S. Nathanson, Bruce K. Miller, Neal S. Dudovitz, National Senior Citizens Law Center, Los Angeles, Cal., for amicus curiae Gray Panthers.
 
 
 8
 Before GIBBONS, ROSENN and GARTH, Circuit Judges.
 
 OPINION OF THE COURT
 
 9
 GARTH, Circuit Judge.
 
 
 10
 These two appeals pose a single question: whether the Employee Retirement Income Security Act of 1974 (ERISA) or the laws of New Jersey invalidate the provision of the pension plans of defendants General Motors and Raybestos-Manhattan authorizing reduction, or offset, of pension benefits by amounts received by the pensioner under a Workmen's Compensation statute. We conclude that these offset provisions are not unlawful under ERISA, and that the New Jersey statute prohibiting them is preempted by ERISA. We therefore reverse the district court orders which enjoined such offsets and which required payment to pension beneficiaries of those amounts which the pension trustees had offset in the past.
 
 I.
 
 11
 Both these cases present similar fact patterns,[1] and procedural histories. General Motors (GM) and Raybestos-Manhattan (Raybestos) maintain pension plans covered by ERISA, 29 U.S.C. § 1001 et seq. (1976). Both pension plans provide that, under certain circumstances, benefits will be reduced by the amount of Workmen's Compensation payments received by plan participants.[2]
 
 
 12
 In 1977, New Jersey enacted a statute expressly prohibiting such offset provisions. The statute, which became effective July 14, 1977, added the italicized sentence to N.J.Stat.Ann. § 34:15-29 (Supp.1979), a part of New Jersey's Workmen's Compensation program. The complete section now provides:
 
 
 13
 The right of compensation granted by this chapter shall have the same preference against the assets of the employer as is now or may hereafter be allowed by law for a claim for unpaid wages for labor. Claims or payments due under this chapter shall not be assignable, and shall be exempt from all claims of creditors and from levy, execution or attachment. The right of compensation granted by this chapter may be set off against disability pension benefits or payments but shall not be set off against employees' retirement pension benefits or payments.
 
 
 14
 Shortly after this statute went into effect, the plaintiffs brought class actions[3] against the defendants in the New Jersey state courts. The named plaintiffs in each suit were former employees of the defendants who had recovered Workmen's Compensation judgments against the defendants and whose pension benefits were being reduced as a result.[4] The suits sought permanent injunctions against the offsets and recoupment damages for those offsets, alleged to be unlawful, which had already been made.
 
 
 15
 Both cases were removed by the defendants to the United States District Court for the District of New Jersey. Both district judges to whom the respective cases were assigned reached the same result. The district court judge in Buczynski issued two published opinions. The first opinion is reported at 456 F.Supp. 867 (D.N.J.1978). The second opinion, which denied reconsideration, is reported at 464 F.Supp. 133 (D.N.J.1978). The district court judge in Alessi issued a single, unpublished letter opinion.
 
 
 16
 Although the complaints in both cases challenged the offsets only on the basis of the New Jersey statute, both courts found the offset invalid under § 203(a) of ERISA, 29 U.S.C. § 1053(a) (1976) (hereinafter § 1053(a)). In so holding, both courts invalidated a regulation issued by the Treasury Department expressly authorizing the offset clauses, 26 C.F.R. § 1.411(a)-4(a) (1979).[5] They also held that the New Jersey statute was not superseded by ERISA's preemption clause, 29 U.S.C. § 1144 (1976).[6]
 
 
 17
 General Motors and Raybestos bring these appeals, challenging the district courts' conclusions that the offsets are invalid under ERISA and that the New Jersey statute is not preempted. We address these issues in turn.[7]
 
 II.
 
 18
 The plaintiffs claim that the defendants' offset is rendered unlawful by ERISA's antiforfeiture provision, 29 U.S.C. § 1053(a) (1976). This section provides in pertinent part:
 
 
 19
 (a) Each pension plan shall provide that an employee's right to his normal retirement benefit is nonforfeitable upon the attainment of normal retirement age and in addition shall satisfy the requirements of paragraphs (1) and (2) of this subsection.
 
 
 20
 A Treasury regulation, however, addresses the permissibility of offsets under ERISA's antiforfeiture provision and expressly authorizes such offsets, declaring them not to be prohibited forfeitures. This regulation provides in pertinent part:[8]
 
 
 21
 Furthermore, nonforfeitable rights are not considered to be forfeitable by reason of the fact that they may be reduced to take into account benefits which are provided under the Social Security Act or under any other Federal or State law and which are taken into account in determining plan benefits.
 
 
 22
 26 C.F.R. § 1.411(a)-4(a) (1979).
 
 
 23
 In determining the legality of the Workmen's Compensation offset, then, we must begin our inquiry with this regulation, which, if held to be valid, would require us to sustain the offset provisions in the General Motors and Raybestos pension plans.
 
 A.
 
 24
 In assessing the validity of 26 C.F.R. § 1.411(a)-4(a) (1979), we first turn to a consideration of the character of the regulation. In this court's recent opinion in Baker v. Otis Elevator Co., 609 F.2d 686 (3d Cir. 1979), which also concerned the validity of a Treasury regulation interpreting a provision of ERISA, we recognized a distinction between two types of administrative regulations, with a corresponding distinction in the appropriate standard of review. We there stated:
 
 
 25
 There can be no question but that the regulation with which we are here concerned is a legislative regulation which was issued pursuant to a clear delegation of rule making authority, see 29 U.S.C. § 1202(c) (1976). As Professor Davis has explained,
 
 
 26
 A legislative rule is the product of an exercise of delegated legislative power to make law through rules. An interpretative rule is any rule an agency issues without exercising delegated legislative power to make law through rules.
 
 
 27
 The distinction between the two kinds of rules is fundamental. . . . Valid legislative rules have about the same effect as valid statutes; they are binding on courts. . . .
 
 
 28
 (By contrast, however,) (c)ourts always have power to substitute their judgment for administrative judgment as to the content of interpretative rules, but they refrain in varying degrees from substituting judgment in various circumstances . . . .
 
 
 29
 2 K. C. Davis, Administrative Law Treatise, § 7:8 at 36-37 (1979). We recognize the distinction in the nature of the two types of rules, leading in turn to a distinction in our standard of review. Our scope of review of legislative rules is far more restricted than the scope of our review of interpretative rules. See id., at 37.
 
 
 30
 609 F.2d at 691.
 
 
 31
 After an analysis of the Supreme Court's decision in Batterton v. Francis, 432 U.S. 416, 97 S.Ct. 2399, 53 L.Ed.2d 448 (1977), which addressed the same issue, we concluded in Baker that, to sustain a legislative regulation, "we need only determine . . . that its promulgation is not an abuse of discretion, that it is neither arbitrary or capricious, nor contrary to the governing statutory section and ERISA as a whole," 609 F.2d at 692.
 
 
 32
 As in Baker the Treasury Department regulation at issue here is plainly legislative in nature; it was issued pursuant to the same delegation of rule-making power as the regulation in Baker, which was there held to be legislative. See 609 F.2d at 691; 29 U.S.C. § 1202(c) (1976). It is thus subject to the limited review prescribed in Baker.[9]
 
 
 33
 The plaintiffs contend that the Treasury regulation must be struck down because it is inconsistent with the governing statutory provision, ERISA's antiforfeiture requirement, 29 U.S.C. § 1053(a) (1976). Before turning to their claim, we think it is appropriate to acknowledge that fidelity to the standard of review set forth in Baker and Batterton, supra, requires that a legislative regulation be invalidated only for a clear and manifest conflict with the governing statute. Overturning a legislative regulation where the statute may arguably be given conflicting readings, or where the conflict between the regulation and the statute is not plain, does violence to the congressional intent to delegate rule-making authority to the administrative agency. Approached from this perspective, the conclusions reached by the district courts in Buczynski and Alessi, that the regulation is inconsistent with 29 U.S.C. § 1053(a) (1976), cannot be sustained: The legislative history affirmatively supports the Treasury regulation, and, at the very least, any conflict between the regulation and the statute, if one indeed exists, is clearly insufficient to mandate invalidation.
 
 B.
 
 34
 The district courts here, as well as the other courts that have invalidated this regulation[10] make similar syllogistic arguments to demonstrate the conflict with ERISA which they perceive. They begin with § 1053(a), which provides broadly that pension benefits must be nonforfeitable. They then focus on § 1053(a)(3), which specifically exempts certain pension plan provisions from the nonforfeitability rule. The list of these exceptions includes, inter alia, nonpayment of benefits if the plan participant dies, § 1053(a)(3)(A), and suspension of benefits if the participant takes a job with an employer in the same industry, § 1053(a)(3)(B). This list, however, does not include offsets for Workmen's Compensation. Finally, these district courts add to § 1053(a) the definition of "nonforfeitable" found in 29 U.S.C. § 1002(19) (1976), which provides:
 
 
 35
 (19) The term "nonforfeitable" when used with respect to a pension benefit or right means a claim obtained by a participant or his beneficiary to that part of an immediate or deferred benefit under a pension plan which arises from the participant's service, which is unconditional, and which is legally enforceable against the plan. For purposes of this paragraph, a right to an accrued benefit derived from employer contributions shall not be treated as forfeitable merely because the plan contains a provision described in section 1053(a)(3) of this title. (emphasis added).
 
 
 36
 Armed with these provisions, these district courts reason as follows: all reductions in benefits are forfeitures; all forfeitures are prohibited by § 1053(a), with the sole exceptions being those listed in § 1053(a)(3); Workmen's Compensation offsets are not included in the list of permissible forfeitures in § 1053(a)(3); ergo, Workmen's Compensation offsets are prohibited forfeitures. Thus, they conclude that the Treasury regulation authorizing offsets for benefits provided under Federal or State law is in conflict with ERISA, and is therefore invalid, because it expands the class of permissible forfeitures beyond those specifically set forth in § 1053(a)(3). The Buczynski district court, in its second opinion, makes the argument as follows:
 
 
 37
 Another difficulty with the defendant's interpretation results from ERISA's handling of the term "nonforfeitable". 29 U.S.C. § 1002(19) provides the definition. Under this section, only the exceptions specifically included in § 1053 are consistent with nonforfeitability. Worker's compensation does not appear. Only deductions included in § 1053(a)(3) are exceptions to § 1002's definition of nonforfeitability.
 
 
 38
 Based on these cases, I must conclude it is clear that Congress expected that pension benefits would generally be nonforfeitable, and that employees would forfeit benefits only under narrowly defined circumstances. Regulations promulgated must assist in achieving this goal. Treas.Reg. § 1.411(a)-4(a), by impeding the attainment of this goal, is inconsistent with the statute. Accordingly, the defendant's reliance on it as a source of expanding the scope of permissible deductions from pension payments is misplaced. Section 1053 forbids the offsets found in the defendant's plan.
 
 
 39
 464 F.Supp. at 135-36 (footnotes and citations omitted).
 
 
 40
 Thereafter, the district court in Alessi, relying on the Buczynski opinions, reached the same result. See Alessi v. Raybestos-Manhattan, No. 78-0434, slip op. at 5 (D.N.J., Feb. 15, 1979).
 
 
 41
 While this argument is not without some superficial appeal, the courts' syllogism is defective, and we must reject it. Understanding this defect, however, requires some explanation of the regulation of pension plans by the Internal Revenue Service before and after ERISA was enacted.
 
 
 42
 Prior to enactment of ERISA in 1974, the Internal Revenue Code set forth a variety of requirements that had to be met by pension plans in order to qualify for favorable tax treatment. One requirement was that the plans be nondiscriminatory. This tax code requirement was set forth in 26 U.S.C. § 401(a)(4) & (5). On the passage of ERISA, these sections were amended, but the amendments did not alter the basic aim of the statute. Discrimination in contributions or benefits under a pension plan was still prohibited. These sections now provide in pertinent part:
 
 
 43
 (a) Requirements for qualification. A trust created or organized in the United States and forming part of a stock bonus, pension, or profit-sharing plan of an employer for the exclusive benefit of his employees or their beneficiaries shall constitute a qualified trust under this section
 
 
 44
 (4) If the contributions or the benefits provided under the plan do not discriminate in favor of employees who are
 
 
 45
 (A) officers,
 
 
 46
 (B) shareholders, or
 
 
 47
 (C) highly compensated.
 
 
 48
 (5) . . . (A) plan (shall not) be considered discriminatory . . . merely because the contributions or benefits of or on behalf of the employees under the plan . . . differ because of any retirement benefits created under State or Federal law. . . .
 
 
 49
 Under these sections, the IRS prior to ERISA had extensive experience with a pension plan provision similar to the offset clause challenged here. That provision was the offset of Social Security benefits against pension benefits. In its interpretation of the clause excerpted above from 26 U.S.C. § 401(a)(5), the IRS had long permitted pension plans to offset pension benefits by the amount of Social Security benefits that a plan participant received. The first such regulation was issued in 1943, and it simply reiterated the statutory language quoted above. The current version of this regulation, issued in 1960, provides as follows:
 
 
 50
 (b) A plan . . . under which the contributions or benefits differ because of any retirement benefit created under State or Federal law, will not be discriminatory because of such exclusion or difference, provided the total benefits resulting under the plan and under such law establish an integrated and correlated retirement system satisfying the tests of section 401(a).
 
 
 51
 26 C.F.R. § 1.401-4(b) (1979).
 
 
 52
 The parties do not dispute that this regulation permits offset of pension benefits by the amount of Social Security benefits received.
 
 
 53
 In enacting ERISA, Congress was familiar with the practice of the IRS allowing such offset provisions. Congress was also aware that the IRS, while allowing such offsets, would not permit any increase in the rate of offset based upon any increase in the level of Social Security benefits occurring after a retiree began to receive his pension. Congress sought to codify this administrative practice of not permitting an increased offset based upon increased Social Security benefits, and did so by enacting § 1021(e) of ERISA, which is codified at 26 U.S.C. § 401(a)(15) (1976). This section provides:
 
 
 54
 (15) a trust shall not constitute a qualified trust under this section unless under the plan of which such trust is a part . . . such benefits are not decreased by reason of any increase in the benefit levels payable under title II of the Social Security Act or any increase in the wage base under such title II, if such increase takes place after September 2, 1974, or (if later) the earlier of the date of first receipt of such benefits or the date of such separation, as the case may be. (emphasis added).
 
 
 55
 Congress's understanding in enacting this section is made clear in the report of the House Ways and Means Committee:
 
 
 56
 Protection is given to retired individuals and individuals who are separated from the service of the employer against reductions in private plan benefits when social security benefit levels increase. In general, under present integration (i. e., offset) procedures, social security benefits attributable to employer contributions are treated as though they were part of the private plan. As a result when the level of social security benefits increases, some integrated plans have reduced the amount of the retirement benefits that they provide for covered employees.
 
 
 57
 Present law under administrative practice provides that qualified plans may not use increases in social security benefit levels to reduce the benefits that they pay where the employees concerned are retired and are already receiving integrated plan benefits. The bill codifies this treatment for retired persons. It also extends the prohibition against reducing plan benefits where social security benefit levels are increased to cases where the individuals concerned are separated from service prior to retirement and have deferred nonforfeitable rights to plan benefits. This provision is effective for increases in social security benefits which take place after the date of enactment or on the date of the first receipt of plan benefits or the date of separation from service (whichever is applicable) if that date is later.
 
 
 58
 These changes do not affect the ability of plans to use the integration procedures to reduce the benefits that they pay to individuals who are currently covered when social security benefits are liberalized.
 
 
 59
 H.R.Rep. No. 93-807, 3 U.S.Code Cong. & Admin.News, pp. 4639, 4670, 4695-96 (1974).
 
 
 60
 Despite certain misgivings about offset, or integration, practices expressed later in this report, Congress chose not to bar the Social Security offset entirely but merely to prohibit increases in the amount of the offset based on increases in the amount of Social Security benefits.
 
 
 61
 A number of conclusions can be drawn from this history, conclusions which shed light on the analysis on which the Alessi and Buczynski courts relied in striking down the Treasury regulation. In choosing only to limit increased Social Security offsets rather than bar them entirely in § 401(a)(15), Congress gave its implicit approval to the practice of permitting offsets against pension plan benefits in that instance, an offset of Social Security benefits against pension plan benefits. Further, since § 401(a)(15) was enacted at the same time as § 1053(a)'s requirement that pension benefits be nonforfeitable, we must conclude that the offset of Social Security benefits implicitly approved in the former section was not simultaneously rendered illegal by the latter section's requirement of nonforfeitability.
 
 
 62
 This conclusion reveals the primary defect in the Buczynski/Alessi district court analyses. Those courts reasoned, as noted above, that all benefit reductions are forfeitures, and all forfeitures are impermissible except for the four exceptions listed in § 1053(a)(3). Yet Congress has approved the Social Security offset, and that offset does not appear among the permissible forfeitures under § 1053(a)(3). Thus, the district courts' reasoning runs afoul of Congress's approval of the Social Security offset. If all reductions in benefits are forfeitures, and all forfeitures are prohibited with the exceptions listed in § 1053(a)(3), then, under the district courts' reasoning, Social Security offsets should also be prohibited. Yet, as we have seen, this is not the case. It is true, as the courts reasoned, that all forfeitures are prohibited with the exception of those listed in § 1053(a)(3), but it cannot be true that all reductions in benefits are necessarily forfeitures. Congress's implicit approval of the Social Security offset compels the conclusion that such an offset is not a forfeiture. Thus, the very basis on which the district courts found the Treasury regulation in issue here to conflict with § 1053(a) is in error.
 
 
 63
 The plaintiffs contend, however, that the Workmen's Compensation offset cannot be sustained on the strength of Congress's approval of the Social Security offset. They contend that even if the Social Security offset is not a forfeiture under ERISA, the Workmen's Compensation offset is. Social Security benefits and pension benefits, they point out, are both designed to compensate for wages lost as a result of old age, and therefore the Social Security offset simply avoids a duplication of benefits directed to the same end. Workmen's Compensation, by contrast, is designed to compensate for losses flowing from employment related injuries; thus, the Workmen's Compensation offset, unlike the Social Security offset, cannot be defended as a means to avoid duplication of benefits.
 
 
 64
 The plaintiffs' argument here fails to recognize the breadth of the Social Security program. Social Security provides benefits for disabilities, see 42 U.S.C. § 423 (1976), as well as benefits for old age. Thus, the Social Security offset that Congress has approved includes, perforce, an offset against pension benefits for disability benefits. The Social Security offset, since it includes an offset of disability benefits, makes any purported distinction between the Social Security offset and the Workmen's Compensation offset meaningless. The disability offset, included within the Social Security offset, thus compels us to reject any purported distinction between Social Security offsets and Workmen's Compensation offsets.
 
 
 65
 And the same argument may be made with respect to benefits provided under the Railroad Retirement Act, 45 U.S.C. § 231 et seq. (1976). The same implicit congressional approval of offsets of Social Security benefits that appears in 26 U.S.C. § 401(a)(15) (1976) is accorded to offsets of Railroad Retirement Act benefits in 29 U.S.C. § 1056(b) (1976).[11] Railroad retirement benefits include payments for disability as well as payments for old age. See 45 U.S.C. § 231a(a)(1)(iv) & (v) (1976). Thus, Congress has implicitly approved two disability offsets against retirement payments. As a result, reliance on the difference in the character of the offsets (retirement benefits as opposed to disability benefits) is misplaced.
 
 
 66
 The conclusion that not all benefit reductions are forfeitures; that, specifically, a Social Security offset is not a forfeiture; and that the district courts' reasoning is erroneous, is enough by itself to require upholding the Treasury regulation under the review of legislative regulations prescribed by Baker v. Otis Elevator and Batterton v. Francis. Once we conclude that Social Security offsets are not forfeitures, in the absence of clear evidence that Congress intended to prohibit Workmen's Compensation offsets, it cannot be said that a regulation allowing Workmen's Compensation offsets is so contrary to ERISA that it cannot stand. Thus, we conclude that there is an insufficient basis on which to strike down the regulation.
 
 C.
 
 67
 Our conclusion that a proper interpretation of ERISA requires giving binding effect to this regulation receives further support in the legislative history of the Act. That history demonstrates to our satisfaction that Congress did not disapprove of Workmen's Compensation offsets as well as Social Security offsets.
 
 
 68
 In the course of IRS administration of the nondiscrimination requirement for pension plans under 26 U.S.C. § 401(a)(4) & (5) (1976), the Service issued a revenue ruling explicitly approving an offset for Workmen's Compensation:
 
 
 69
 Section 401(a)(5) of the Code provides that a plan shall not be considered discriminatory merely because the contributions or benefits of or on behalf of the employees under the plan differ because of any retirement benefits created under State or Federal law.
 
 
 70
 The effect of section 401(a)(5) of the Code is to permit total benefits inclusive of those provided under the social security or similar program, to be used for comparative purposes. See Part 4(j) of Revenue Ruling, 65-178, C.B. 1965-2, 94. A program, like the social security program, that requires employer contributions and makes benefits available to the general public is a similar program for purposes of Part 4(j) of Revenue Ruling 65-178.
 
 
 71
 Further, section 401(a)(5) of the Code does not provide for the offset of benefits under a qualified plan by disability damages recovered from an employer in a common law action. Such disability damages are not paid under a program similar to the social security program and offsetting retirement benefits by disability damages of this type would result in the plan being used to satisfy the employer's liability for damages.
 
 
 72
 Since the benefits payable under a workmen's compensation law or occupational diseases law are available to the general public, it is held that benefits payable under such laws are acceptable as an offset against benefits payable under the qualified pension plan in the instant case. However, benefits under the plan may not be offset by disability damages recovered by an employee in a common law action against the employer. (emphasis added).
 
 
 73
 Rev.Rul. 68-243, 1968-1 C.B. 157, 158.
 
 
 74
 The substance of this ruling has been republished by the IRS on two occasions.[12]
 
 
 75
 The legislative history of ERISA indicates that Congress was familiar with the IRS rules on integration of benefits in pension plans, and intended that these rules be preserved. The report of the Conference Committee states:
 
 
 76
 Moreover, the conferees intend that the antidiscrimination rules of present law in areas other than the vesting schedule are not to be changed. Thus, the present antidiscrimination rules with respect to coverage, and with respect to contributions and benefits are to remain in effect. Also, the antidiscrimination rules may be applied with respect to benefit accruals.
 
 
 77
 H.Conf.Rep. No. 93-1280, 3 U.S.Code Cong. & Admin.News 5038, 5058 (1974).
 
 
 78
 This history of IRS practice with respect to Workmen's Compensation offsets, and of congressional preservation of the antidiscrimination rules, suggests that, if anything, Congress approved of Workmen's Compensation offsets. Thus, the evidence indicates that the Treasury regulation in issue here conforms to congressional intent. Accordingly, because the regulation is not contrary to § 1053(a) and the provisions of ERISA as a whole, we must sustain its validity.[13]III.
 
 
 79
 Our conclusion that the Treasury regulation must be sustained does not, by itself, require granting judgment in favor of the defendants. For even if ERISA does not prohibit the Workmen's Compensation offset in the GM and Raybestos pension plans, New Jersey's 1977 statute does. This statute, as noted earlier, provides in relevant part:
 
 
 80
 The right of compensation granted by this chapter (the workmen's compensation act) may be set off against disability pension benefits or payments but shall not be set off against employees' retirement pension benefits or payments.
 
 
 81
 N.J.Stat.Ann. § 34:15-29 (Supp.1979).
 
 
 82
 The statute, of course, prohibits the offset clause challenged here, and the defendants do not contend otherwise. They do claim, however, that this statute is superseded by ERISA's preemption provision, 29 U.S.C. § 1144(a) (1976).[14] This section states:
 
 
 83
 (a) Except as provided in subsection (b) of this section,[15] the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title. This section shall take effect on January 1, 1975.
 
 
 84
 The district court judge in Buczynski, despite his conclusion that the offset provision was unlawful under ERISA itself, nevertheless discussed the preemption issue. The district court in Buczynski, followed thereafter by Alessi, concluded that the New Jersey statute was not preempted:
 
 
 85
 It is true that under ERISA, 29 U.S.C. § 1144(a), all state laws which "relate to" any employee benefit plan covered by ERISA are superseded. Although the New Jersey statute undoubtedly "relates to" pension plans in the broadest dictionary sense of that term, this court cannot agree with the defendant that the New Jersey statute "relates to" pension plans within the meaning of ERISA, 29 U.S.C. § 1144(a). Congress, to be sure, must have intended by that language to occupy the entire field of pension plan law to the exclusion of all state regulation. However, the New Jersey statute at issue here is no way concerned with pension plans qua pension plans. On the contrary, the New Jersey statute is solely concerned with protecting the employee's right to worker's compensation disability benefits. . . .
 
 
 86
 Congress, by enacting ERISA, and the specific preemptive language of 29 U.S.C. § 1144(a), could not have intended to prohibit states from protecting an employee's state-created right to worker's compensation benefits by enacting laws such as the one New Jersey enacted here.
 
 
 87
 456 F.Supp. at 872-73 (citations omitted).
 
 
 88
 Our reading of ERISA satisfies us that ERISA does preempt N.J.Stat.Ann. § 34:15-29 (Supp.1979). Thus, we cannot agree with the district courts that have concluded otherwise.[16] The primary purpose of the statute, and its direct effect, is to prohibit pension plans from offsetting Workmen's Compensation benefits against pension retirement benefits. It simply cannot be said that this statute does not concern pension plans qua pension plans (Buczynski ), or that its effect on such plans is merely collateral (Alessi ). In our opinion, the only purpose and effect of the statute is to set forth an additional statutory requirement for pension plans; this purpose negates the characterization of the statute attributed to it by the New Jersey district courts.
 
 
 89
 Further, ERISA preempts state statutes that "relate to any employee benefit plan," 29 U.S.C. § 1144(a) (1976) (emphasis added). The view taken by the Buczynski court, that ERISA preempts only statutes concerning "pension plans qua pension plans," could be accepted only if ERISA's preemption clause were much more narrowly drawn than it is. Here, the preemption clause, reaching statutes that "relate to" pension plans, has an obviously broader scope.
 
 
 90
 In noting that "the New Jersey statute undoubtedly 'relates to' pension plans in the broadest dictionary sense of that term," 456 F.Supp. at 872, the district court in Buczynski appears to concede the difficulty of its narrow interpretation. The court reasoned, however, that Congress could not have intended the term to be given its full breadth. Yet the legislative history of the clause, as well as the plain meaning of its language, belie this claim. The legislative history of the clause has been detailed elsewhere and we need not repeat it here. See Wadsworth v. Whaland, 562 F.2d 70, 76-77 (1st Cir. 1977), cert. denied, 435 U.S. 980, 98 S.Ct. 1630, 56 L.Ed.2d 72 (1978); National Carriers' Conference Comm. v. Heffernan, 454 F.Supp. 914, 915-17 (D.Conn.1978); Hewlett-Packard Co. v. Barnes, 425 F.Supp. 1294, 1297-1300 (N.D.Cal.1977), aff'd per curiam, 571 F.2d 502 (9th Cir.), cert. denied, 439 U.S. 831, 99 S.Ct. 108, 58 L.Ed.2d 125 (1978). We need only note its most prominent features: that the original House and Senate provisions were significantly narrower, and were rejected by the Conference Committee in favor of the current provision; and that explanations of the Conference substitute given on the floor of both chambers make plain that the preemptive intent is just as broad as its language suggests. Thus, it is clear that the preemption provision is intended to be read in its normal dictionary sense, and that the New Jersey statute prohibiting Workmen's Compensation offsets cannot stand.[17]
 
 IV.
 
 91
 We conclude that the Workmen's Compensation offset in General Motors' and Raybestos' pension plans is not a forfeiture rendered invalid by ERISA's antiforfeiture provision, 29 U.S.C. § 1053(a) (1976). In so concluding, we sustain the Treasury regulation expressly authorizing provisions of this type, 26 C.F.R. § 1.411(a)-4(a) (1979). We also conclude that the New Jersey statute that prohibits these offsets, N.J.Stat.Ann. § 34:15-29 (Supp.1979), is preempted by ERISA, 29 U.S.C. § 1144(a) (1976).
 
 
 92
 In light of our conclusions, which are contrary to the conclusions reached by the district courts in both Buczynski and Alessi, we will vacate the respective orders dated April 3, 1979 (Buczynski ) and March 1, 1979 (Alessi ) which permanently enjoin the defendants from offsetting Workmen's Compensation benefits and which required that reimbursement be made for amounts offset in the past; we direct that the district courts enter judgment for the defendants. Each side shall bear its own costs.
 
 
 
 [1]
 No material facts are in dispute in either case. In Alessi, all facts were stipulated. In Buczynski, the parties filed a stipulation of facts and the plaintiffs presented, at the instance of the district court, the testimony of Hubert Clodfelter. Clodfelter was a union negotiator for the United Auto Workers in 1970 when the GM pension plan was under consideration. He testified about the meaning of the "unless prohibited by law" clause in the GM offset provision. See note 2 infra
 
 
 [2]
 The GM offset clause provides:
 Section 2. Deductions for Workmen's Compensation
 In determining the monthly benefits payable under this Plan, a deduction shall be made unless prohibited by law, equivalent to all or any part of Workmen's Compensation (including compromise or redemption settlements) payable to such employee by reason of any law of the United States, or any political subdivision thereof, which has been or shall be enacted, provided that such deductions shall be to the extent that such Workmen's Compensation has been provided by premiums, taxes or other payments paid by or at the expense of the Corporation, except that no deduction shall be made for the following:
 (a) Workmen's Compensation payments specifically allocated for hospitalization or medical expense, fixed statutory payments for the loss of any bodily member, or 100% loss of use of any bodily member, or payments for loss of industrial vision.
 (b) Compromise or redemption settlements payable prior to the date monthly pension benefits first become payable.
 (c) Workmen's Compensation payments paid under a claim filed not later than two years after the breaking of seniority.
 The Raybestos offset clause provides:
 All Retirement Income payments shall be reduced by the entire amount of any and all payments the Member is eligible to receive under any and all statutes pertaining to workmen's compensation, occupational disease, unemployment compensation, cash sickness benefits, and similar laws, other than primary Social Security benefits, presently in effect or which may be enacted from time to time, which payments are paid concurrently with the Retirement Income.
 
 
 [3]
 In Alessi, the request for class certification was abandoned after the case was removed to the federal courts, and the action was continued on behalf of the named plaintiffs only. In Buczynski, the following class was certified by consent of the parties:
 The certified class consists "of those persons who are retired members of the General Motors Corporation Hourly-Rate Employees Pension Plan who retired under the provisions of said Pension Plan as set forth in Exhibit A-1 to the Agreement between General Motors Corporation and the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, dated November 11, 1970, November 19, 1973, or November 22, 1976, who retired with benefits payable for months commencing on or after April 1, 1971, and who, at the time of their retirement, were employed by General Motors Corporation in New Jersey." See order filed August 9, 1978.
 Buczynski v. General Motors Corp., 456 F.Supp. 867, 868 n.1 (D.N.J.1978).
 
 
 [4]
 One of the Alessi plaintiffs, Helen Vogt, had not yet begun to receive her plan benefits (which were deferred termination benefits rather than retirement payments) by the time suit was filed, and thus had not yet suffered the impact of the offset clause. She was scheduled to begin receiving termination benefits on February 1, 1979
 
 
 [5]
 The Buczynski court's first opinion made no mention of the Treasury regulation. The regulation was only considered and found invalid in the opinion responding to GM's motion for reconsideration. See 464 F.Supp. at 134-36
 
 
 [6]
 The Buczynski court also held that it need not reach the preemption claim since it had already found that the offset was invalid under ERISA itself. See 456 F.Supp. at 872. Preemption was discussed, however, by assuming arguendo that the offset was not invalid under ERISA, see id. The court concluded that the New Jersey statute was not preempted, id. at 872-74
 After the Buczynski and Alessi opinions were issued, still another opinion of the district court of New Jersey addressing these questions was filed. Carpenter Technology Corp. v. Boyton, No. 78-1415 (D.N.J., Dec. 12, 1979). Carpenter diverged from Buczynski and Alessi by holding that ERISA did, indeed, preempt the New Jersey statute. See our discussion infra at Part III. The Carpenter court reached the same result as its predecessors, however, by holding that the Workmen's Compensation offset was prohibited by ERISA itself.
 
 
 [7]
 The State of New Jersey has intervened in both Alessi and Buczynski. In addition, several amicus briefs have been filed in Buczynski. The United States as amicus urges reversal of the district court. So do several steel companies, who are involved in litigation on this same issue in the Western District of Pennsylvania. These steel companies are: Crucible, Inc., Jones & Laughlin Steel Corp., Mesta Machine Co., Pullman-Standard, Shenango, Inc., United States Steel Corp., and Wheeling-Pittsburgh Steel Corp. The individual steelworkers, who are suing their employers on this issue, urge affirmance. The steelworkers are Carmen F. Gargon, Frank E. Doumont, Robert Milanovich, Wayne C. Banks, Michael E. Barna, Paul J. Miller, and George Zihol. The Gray Panthers, one of the amici permitted to file in Buczynski, urge affirmance as well
 
 
 [8]
 This Treasury regulation was not issued under ERISA's antiforfeiture requirement found at 29 U.S.C. § 1053(a) (1976), but rather under an antiforfeiture provision included in the Internal Revenue Code requirements for pension plans, 26 U.S.C. § 411(a) (1976). The tax code requirement for pension plans was enacted in Title II of ERISA. ERISA expressly provides that Treasury Department regulations under the tax code pension provisions shall apply to the analogous provisions of ERISA codified in Title 29 of the United States Code. 29 U.S.C. § 1202(c) (1976) provides:
 (c) Regulations proscribed by the Secretary of the Treasury under sections 410(a), 411, and 412 of Title 26 (relating to minimum participation standards, minimum vesting standards, and minimum funding standards, respectively) shall also apply to the minimum participation, vesting, and funding standards set forth in parts 2 and 3 of subtitle B of subchapter I of this chapter which include 29 U.S.C. § 1053(a). Except as otherwise expressly provided in this Act, the Secretary of Labor shall not prescribe other regulations under such parts, or apply the regulations prescribed by the Secretary of the Treasury under sections 410(a), 411, 412 of Title 26 and applicable to the minimum participation, vesting, and funding standards under such parts in a manner inconsistent with the way such regulations apply under sections 410(a), 411, and 412 of Title 26.
 We thus conclude that the Treasury regulation issued under the antiforfeiture requirement of 26 U.S.C. § 411(a) (1976) must, if valid, control our interpretation of 29 U.S.C. § 1053(a) (1976) as well. None of the parties here contends otherwise. This issue is discussed at greater length in Baker v. Otis Elevator Co., 609 F.2d 686 at 689-690 (3d Cir. 1979).
 
 
 [9]
 Neither district court here recognized that 26 C.F.R. § 1.411(a)-4(a) (1979) is a legislative regulation. Other courts that have invalidated this regulation have failed as well to recognize this salient characteristic. See note 10 infra. By failing to accord this regulation the appropriate degree of deference, these courts have impermissibly substituted their own judgment as to the interpretation of the statute for that of the Treasury Department
 
 
 [10]
 In addition to Buczynski and Alessi, offset provisions have been declared unlawful, and the Treasury regulation has been invalidated, in Stong v. Bucyrus-Erie, 472 F.Supp. 1089 (E.D.Wis.1979); Utility Workers' Union v. Consumers Power Co., 453 F.Supp. 447 (E.D.Mich.1978), appeal docketed, No. 78-1402 (6th Cir., August 2, 1978); and Carpenter Technology Corp. v. Boyton, No. 78-1415 (D.N.J., Dec. 12, 1979). Offset provisions, and the Treasury regulation authorizing them, have been upheld in Bordine v. Evans Products Co., 453 F.Supp. 19 (E.D.Mich.1978); Pavlovic v. Chrysler Corp., No. 7-70438 (E.D.Mich., Jan. 10, 1978), and Carlson v. Bundy Corp., No. 6-72272 (E.D.Mich.1977)
 
 
 [11]
 29 U.S.C. § 1056(b) provides in pertinent part:
 (A) plan may not decrease benefits of such a participant by reason of any increase in the benefit levels payable under title II of the Social Security Act or the Railroad Retirement Act of 1937, or any increase in the wage base under such title II, if such increase takes place after September 2, 1974, or (if later) the earlier of the date of first entitlement of such benefits or the date of such separation. (emphasis added).
 
 
 [12]
 In 1969, the IRS published an extensive Revenue Ruling consolidating and updating the rules on qualification of pension plans under 26 U.S.C. § 401 (1976). This ruling contained the same position expressed in Revenue Ruling 68-243:
 (4) Integration With Benefits Provided Under Other Public Programs. Benefits provided under a pension, annuity, profit-sharing, or stock bonus plan may be integrated with those provided under a state or Federal program that, like the social security program, requires employer contributions and makes benefits available to the general public. Thus, benefits payable under a state workmen's compensation law or an occupational diseases law may be an acceptable offset against benefits payable under a qualified plan. However, benefits payable under a qualified plan may not be offset by disability damages recovered by an employee in a common law action against the employer. See Rev.Rul. 68-243, C.B. 1968-1, 157. (emphasis added).
 Rev.Rul. 69-421, part 4, (j)(4), 1969-2 C.B. 61, 72.
 This same provision was included without change in a special IRS publication in 1972. Internal Revenue Service, Pub. No. 778, Guides for Qualification of Pension, Profit-Sharing, and Stock Bonus Plans 15 (1972).
 
 
 [13]
 An additional argument in support of the position taken by GM and Raybestos was made by the amicus steel companies. They called our attention to a proposal made in Congress by Senators Harrison Williams and Jacob Javits, two of the original sponsors of ERISA. The proposal, if enacted into law, which it was not, would have prohibited Workmen's Compensation offsets. The proposal states:
 (a) Section 206(b) of such Act (ERISA) is amended
 (3) by adding at the end thereof the following new sentence: "A pension plan may not reduce or suspend retirement pension benefits being received by a participant or beneficiary or retirement pension benefits in which a participant who is separated from the service has a nonforfeitable right by reason of any payment made to the participant or beneficiary by the employer maintaining the plan as the result of an award or settlement made under or pursuant to a workers' compensation law."
 As we understand the argument, the steel companies contend that there would have been no need for the introduction of such a proposal unless ERISA as originally enacted, and as currently in force, permitted Workmen's Compensation offsets.
 While certainly plausible, we do not attribute much weight to this argument. The difficulty with it, as with all arguments of this nature, is that the understanding of the amendment's sponsors is open to conflicting interpretations. It is possible that the sponsors believed that such offsets were permissible under the original ERISA. It is also possible, however, that they believed that such offsets were impermissible under ERISA as enacted, and sought the amendment to override the Treasury regulation that erroneously, in their view, authorized such offsets. Thus, the argument cuts both ways.
 Two additional arguments, attacking our conclusion that the regulation is valid, are made by amici Gray Panthers and Steelworkers. Neither of these arguments merits discussion. They argue that the regulation conflicts with 29 U.S.C. § 1056(d)(1) (1976), which provides that pension plan benefits "may not be assigned or alienated," and with 29 U.S.C. § 1103(c)(1) (1976), which provides that "the assets of a plan shall never inure to the benefit of any employer, and shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan." In our opinion, the discussion and analysis found in part II, supra, which demonstrates an overriding congressional intent to permit Workmen's Compensation offsets against pension benefits, disposes of these contentions as well.
 
 
 [14]
 The State of New Jersey, which has intervened in both Buczynski and Alessi, asks us to abstain from deciding the preemption question. It suggests that if we await a New Jersey state court interpretation of the statute, it may obviate our consideration of the preemption claim. The state suggests that the New Jersey courts are likely to hold that N.J.Stat.Ann. § 34:15-29 (Supp.1979) protects employees who obtained Workmen's Compensation judgments after the statute went into effect. Since all the plaintiffs in Alessi and all the named plaintiffs in Buczynski recovered their judgments before the effective date of the statute, it does not, New Jersey argues, protect them and there is no need to determine whether the statute is preempted by ERISA
 However, we decline to abstain for two reasons. First, the construction of the statute that New Jersey proposes will not forever remove the need for consideration of the preemption question. It will simply postpone consideration until a claim is made by an employee who recovered a Workmen's Compensation award after July 14, 1977 and it appears to us that such a claim is not far off. Second, and of greater importance, the certified class in Buczynski appears to include persons who recovered Workmen's Compensation judgments after the statute's effective date. See note 3 supra. Thus, there are plaintiffs in this suit who are protected by the statute regardless of how the New Jersey courts may construe the statute. In this posture, then, we are obliged to resolve the preemption claim.
 
 
 [15]
 None of the exceptions referred to are applicable here, and the plaintiffs do not argue to the contrary
 
 
 [16]
 As previously noted, see note 6 supra, still another New Jersey district court has addressed this preemption question, and agrees with our conclusion that the New Jersey statute is preempted by ERISA. See Carpenter Technology Corp. v. Boyton, No. 78-1415, slip op. at 5-9 (D.N.J., Dec. 12, 1979)
 
 
 [17]
 Raybestos, in the district court in Alessi, contended that the New Jersey statute should be struck down on at least two other grounds. First, that the statute was preempted under the National Labor Relations Act, and, second, that it was an unconstitutional impairment of the obligation of contracts. The court rejected both of these attacks, slip op. at 6-7. In light of our conclusion that the statute is preempted by ERISA itself, we need not reach these issues