

1999 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-7-1999

# Leheny v. Cty of Pittsburgh

Precedential or Non-Precedential:

Docket 98-3356

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1999

Recommended Citation

"Leheny v. Cty of Pittsburgh" (1999). *1999 Decisions.* Paper 193.
http://digitalcommons.law.villanova.edu/thirdcircuit_1999/193

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1999 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed July 7, 1998

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Nos. 98-3356, 98-3364, 98-3405

THOMAS E. LEHENY; JAMES R. RAMSEY; ARTHUR
MARUNICH, for themselves and others similarly situated

       Thomas E. Leheny,
       Appellant No. 98-3364

v.

CITY OF PITTSBURGH; POLICEMEN'S RELIEF AND
PENSION FUND OF THE CITY OF PITTSBURGH;
FRATERNAL ORDER OF POLICE, FORT PITT LODGE
NO. 1

       City of Pittsburgh,
       Appellant Nos. 98-3356/3405

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 94-cv-00866)
District Judge: Hon. Maurice B. Cohill, Jr.

Argued: May 4, 1999

Before: ALDISERT, WEIS and STAPLETON, Circuit Judges,

(Filed: July 7, 1999)

Joseph S. Hornack (argued)
Healey, Davidson & Hornack
Fifth Floor
Law & Finance Building
Pittsburgh, PA 15219

 ATTORNEY FOR
 APPELLEES/CROSS-APPELLANTS

Brian P. Gabriel (argued)
Assistant City Solicitor
City of Pittsburgh Department
 of Law
Firm #046
313 City-County Building
414 Grant Street
Pittsburgh, PA 15219

 ATTORNEY FOR
 APPELLANTS/CROSS-APPELLEES

OPINION OF THE COURT

ALDISERT, Circuit Judge.

These cross-appeals by the City of Pittsburgh and three retired police officers (the "Retirees") require us to decide whether a City policy that offsets pension benefits for disabled retired police officers by worker's compensation benefits violates equal protection and due process rights and constitutes a violation of the Americans with Disabilities Act, 42 U.S.C. S 12101 et seq. ("ADA"). The district court dismissed the Retirees' ADA claim but submitted the constitutional claims to a jury that awarded compensatory damages.

In its appeal from the judgment on the jury verdict, the City contends that the court erred in not granting judgment as a matter of law on the equal protection and due process claims. In their appeal, the Retirees contend that the court erred in dismissing their ADA claim. We have jurisdiction pursuant to 28 U.S.C. S 1291.

We hold that the district court correctly dismissed the Retirees' ADA claim but erred when it failed to grant judgment as a matter of law in the City's favor on the equal protection and due process claims. Accordingly, we will affirm in part and reverse in part.

I.

The Retirees are former police officers for the City of Pittsburgh. Each suffered a work-related injury and received his full rate of salary pursuant to the Heart and Lung Act, 53 P.S. S 637, until approximately December 14, 1992.1 On December 14, 1992, Thomas E. Leheny and James R. Ramsey signed documents acknowledging their permanent disability, and therefore became ineligible for Heart and Lung Act benefits but eligible to collect worker's compensation and reduced pension benefits. These appeals pertain to the amount of pension benefits for which the Retirees became eligible.

Prior to 1992, police officers who were unable to return to work due to injury remained on the City's active payroll and received 100% of their salary pursuant to the Heart and Lung Act. These payments placed a significant strain on the City's fiscal integrity.

The City's financial concerns were addressed in March 1992, after an impasse had been reached in the collective bargaining process with the Fraternal Order of Police (F.O.P.), when an arbitration award was issued that eventually became a part of a collective bargaining agreement. Officers meeting age and service eligibility requirements could choose to be placed on one of two lists of officers who wished to retire prior to the end of 1995 under an "early retirement incentive plan." List A would consist of all officers seeking immediate retirement. List B would consist of all officers who wished to retire before December 31, 1995, when eligibility for this early

_____

1. The Retirees accepted Heart and Lung Act benefits in lieu of lesser benefits provided pursuant to the Pennsylvania Worker's Compensation Act, 77 P.S. S 1 et seq. The Heart and Lung Act permits police officers to receive their full salary during a period of temporary disability.

3

retirement incentive would end. Officers on List B could be retired by the City at any time after all officers on List A had been retired, but were guaranteed retirement by December 31, 1995.

Officers selecting to be placed on either list were required to fill out a Retirement Incentive Window Irrevocable Application Form prior to September 1, 1992. See App. at 115 (arbitration award provision), 121 (letter from Fraternal Order of Police to officers describing procedure for early retirement incentive). The Retirees chose to be placed on List B.

Pursuant to the arbitration award, officers on either list who were at least 50 years of age and had at least 25 years of service were given the opportunity to receive an enhanced retirement benefit equal to 75% of their average monthly pay without service increments. App. at 115–116. For disabled officers who were receiving worker's compensation, the award provided that:

> An employee who is receiving worker's compensation benefits can receive up to 66 2/3 [%] of pay from worker's compensation and receive 50% of average monthly pay plus service increments under the Police Pension Plan without any offset. . . . However, an employee who is already eligible on retirement for combined benefits in excess of 75% of average monthly pay and who elects to retire pursuant to the retirement incentive shall not be entitled to any additional pension benefit from the retirement incentive provided for in this Award. In the event that such employee's worker's compensation benefits are reduced or eliminated after retirement, the employee shall be entitled to such pension enhancement as is necessary to maintain a benefit, including worker's compensation, if any, which is 75% of average monthly pay at retirement.[2]

_____

2. This reduced pension was available to all permanently disabled officers, regardless of age and service. See City's Br. at 18. Because the reduced pension for disabled officers was not limited to those who met the 50 years of age/25 years of service plateau, there may have been officers who were eligible for reduced benefits because they collect

4

App. at 116. Officers who accepted this enhancement but continued to receive worker's compensation were not deemed "voluntary quits."

The Retirees were requested to sign supplemental agreements acknowledging their permanent disability. By signing these agreements, the Retirees agreed to the termination of their benefits under the Heart and Lung Act, which provided 100% salary payments. In place of these benefits, the Retirees would be eligible to receive worker's compensation benefits, which provide up to 66 2/3% of the worker's salary. The City planned to submit these agreements to an office in Harrisburg to terminate payment of Heart and Lung Act benefits.

The City had retained Sedgwick James, an independent agency retained by the City for disability claims management service, to process these claims. Leheny and Ramsey were shown a letter from Sedgwick James that directed the F.O.P.'s attorney to contact certain officers and have them sign supplemental agreements acknowledging that they were permanently disabled. This letter stated that "[if anyone decides not to sign the agreement, then I [Kelly Ryan, a Sedgwick James employee] will have no recourse but to file a Termination with the Heart and Lung Panel." App. at 954.

Leheny and Ramsey signed the agreements. They testified at trial that they interpreted the letter to mean that they would lose all of their work-related and injury-related benefit payments if they did not sign the supplemental agreement. They contended that they were not informed that Ryan had no authority to terminate or file a termination of Heart and Lung Act benefits, nor were they made aware that they could decline to sign the agreement and then go before an arbitrator if the City filed a

_____

worker's compensation, but who were not eligible for the enhanced incentive pension. Those officers would not be "similarly situated" to those receiving the 75% pension, and thus the provision would not be unconstitutional on its face. Here, however, it is clear that the Retirees each had achieved the age and service requirement, and thus we must determine whether the provision is unconstitutional as applied to them.

5

termination petition. Retiree Arthur Marunich, however, refused to sign the supplemental agreement, and received a hearing in front of an arbitrator in accordance with the arbitration award's grievance procedure.3

After Leheny and Ramsey signed the supplemental agreements, they applied for the 75% pensions provided for by the arbitration award. In January 1993, the City's Policemen's Relief and Pension Fund (the "Fund") approved Leheny's and Ramsey's applications for retirement benefits. However, instead of awarding the 75% pension, the Fund awarded Leheny and Ramsey the 50% pension in accordance with the provisions of the arbitration award because they were receiving worker's compensation benefits.

After exhausting administrative procedures, the Retirees filed a complaint in the district court, alleging, inter alia, that the City, the F.O.P. and the Fund had violated their rights to equal compensation under the ADA, as well as their equal protection and due process rights.

The Retirees filed a motion for class certification on September 2, 1994. On January 27, 1995, the City moved for summary judgment. The Retirees also filed a motion for partial summary judgment. These motions were assigned to a Magistrate Judge, who conducted a hearing and subsequently issued her report and recommendation from the bench. She recommended that: (1) the Retirees' partial motion for summary judgment be denied; (2) the City's motion for summary judgment be granted as to the Retirees' ADA claim, but be denied in all other respects; and (3) the motion for class certification be denied as moot if the district court agreed that the ADA claim should be dismissed.

The district judge adopted and approved the report and recommendation in toto, and set the matter for trial. Another district judge presided at the trial. At the close of the Retirees' case-in-chief, the City moved for judgment as a matter of law. The district court reserved ruling on the

_____

3. Because Marunich received a hearing before an arbitrator, he did not allege a violation of his due process rights.

motion. At the close of all evidence, the City renewed its motion for judgment as a matter of law. Once again, the court reserved ruling.

The jury issued special verdicts, finding that: (1) the F.O.P. was not acting under color of state law and therefore could not be held liable on the constitutional violation claims; (2) the City violated Leheny's and Ramsey's due process rights when it forced them to sign the supplemental agreements; (3) Leheny and Ramsey were entitled to compensatory damages in the amounts of $15,000 and $22,000 respectively for the due process violations; and (4) the City deprived the Retirees of their equal protection rights when it determined that the Retirees were only entitled to a 50% pension and 66 2/3% worker's compensation benefits. After the verdicts were rendered, the district court denied the City's motion for judgment as a matter of law.

The City timely filed a motion for a new trial, which was immediately denied. On April 14, 1998, the Retireesfiled a motion for prejudgment interest and a motion for costs and attorney's fees. The district court granted the Retirees' motions on May 22, 1998, without explanation: The court simply signed the Retirees' proposed form of order. These appeals followed.4

On appeal, the City contends that the district court was obligated, pursuant to case law from this court, to grant the motion for judgment as a matter of law as to the Retirees' equal protection claim. Further, the City argues that the Retirees, as a matter of law, failed to establish that they had been forced to retire in violation of their due process rights. Conversely, the Retirees contend that our holding in Ford v. Schering–Plough Corp., 145 F.3d 601 (3d Cir. 1998), requires reinstatement of their ADA claim, and that the district court abused its discretion when it denied their motion for class certification.5

_____

4. The F.O.P. and the Fund are not parties to these appeals.
5. The City has also appealed certain evidentiary rulings made by the district court concerning the admissibility of testimony of non–disabled officers' post–retirement earnings and the district court's failure to explain its award of prejudgment interest and attorney's fees. These issues, as well as the Retirees' appeal of the denial of the motion for class certification, need not be addressed because of the discussion that follows.

7

II.

We review de novo the district court's denial of the City's motions for judgment as a matter of law. Paolella v. Browning-Ferris, Inc., 158 F.3d 183, 189 (3d Cir. 1998). "A motion for judgment as a matter of law should be granted only if, `viewing all the evidence . . . in the light most favorable to the party opposing the motion, no jury could decide in that party's favor.' " Id. (quoting Walter v. Holiday Inns, Inc., 985 F.2d 1232, 1238 (3d Cir. 1993)). Review of the district court's grant of summary judgment in the City's favor as to the Retirees' ADA claim is also plenary. Pavlik v. Lane Limited/Tobacco Exporters Int'l, 135 F.3d 876, 880 (3d Cir. 1998).

III.

We conclude that the Retirees' constitutional law claims are inconsistent with the teachings of this court in Buczynski v. General Motors Corp., 616 F.2d 1238, 1246 (3d Cir. 1980), aff'd sub nom. Alessi v. Raybestos-Manhattan, Inc., 451 U.S. 504 (1981), that held that the Employee Retirement Security Act of 1974 ("ERISA") did not invalidate a pension plan provision authorizing reductions or offsets of pension benefits by amounts received by pensioners under a worker's compensation statute.

A.

We begin our analysis of the Retirees' contention that the arbitration award violated the Equal Protection Clause with a determination of the appropriate standard of review. See Donatelli v. Mitchell, 2 F.3d 508, 513 (3d Cir. 1993). The Retirees have alleged that state action disparately affected the economic rights of a specific group of retired Pittsburgh police officers. Because the City's action involves neither fundamental rights nor suspect classifications, it is accorded a strong presumption of validity and is subject to rational basis review, in which the Retirees must establish that the action was not rationally related to effecting any legitimate government purpose. Heller v. Doe, 509 U.S. 312, 319-321 (1993).

8

It is clear that the City's asserted purposes for creation of the early retirement incentive--to maintain the City's fiscal integrity and to avoid paying duplicate benefits--are legitimate government concerns. See Graham v. Richardson, 403 U.S. 365, 371-376 (1971). Accordingly, the primary question presented here is whether the early retirement incentive, with its distinction between retirees who receive worker's compensation and those who do not, bears a rational relationship to those asserted purposes.

In the context of an ERISA-based action, in Buczynski we addressed whether pension benefits and worker's compensation benefits are interchangeable. We were called upon to determine whether ERISA invalidated a pension plan provision that authorized the reduction or offset of pension benefits by amounts received by pensioners under the worker's compensation statute. The court conducted a lengthy analysis that analogized provisions of the Internal Revenue Code and applicable legislative history regarding Congressional approval of offsets of pension benefits by amounts received from the Social Security Administration to the type of offset at issue here. See Buczynski, 616 F.2d at 1244-1246. In S 1021(e) of the Internal Revenue Code, 26 U.S.C. S 401(a)(15), Congress specifically permitted such offsets of pension benefits irrespective of ERISA's nonforfeiture provision, 29 U.S.C. S 1053(a).

The pensioners in Buczynski argued that offset of pension benefits by amounts received from worker's compensation could not be sustained on the basis of Congress' approval of the Social Security offset. The pensioners argued that Social Security benefits and pension benefits

> are both designed to compensate for wages lost as a result of old age, and therefore the Social Security offset simply avoids a duplication of benefits directed to the same end. Workmen's Compensation, by contrast, is designed to compensate for losses flowing from employment related injuries; thus, the Workmen's Compensation offset . . . cannot be defended as a means to avoid duplication of benefits.

Buczynski, 616F.2d at 1246.

9

We disagreed with the pensioners' reasoning:

> The plaintiffs' argument here fails to recognize the breadth of the Social Security program. Social Security provides benefits for disabilities, see 42 U.S.C. S 423 (1976), as well as benefits for old age. Thus, the Social Security offset that Congress has approved includes, perforce, an offset against pension benefits for disability benefits. The Social Security offset, since it includes an offset of disability benefits, makes any purported distinction between the Social Security offset and the Workmen's Compensation offset meaningless. The disability offset, included within the Social Security offset, thus compels us to reject any purported distinction between Social Security offsets and Workmen's Compensation offsets.

Id. In Alessi, the Court put its imprimatur on our discussion. See 451 U.S. at 519-521.

Although Buczynski involved an ERISA-based challenge rather than a challenge under the Constitution, the precepts enunciated in that case are controlling here. Our holding in Buczynski can be distilled to a single concept: An offset of pension benefits by a portion of the benefits received from worker's compensation is permissible, in the same manner as an offset of Social Security benefits, because both offsets encompass, at least in part, "an offset of disability benefits, mak[ing] any purported distinction between [a] Social Security offset and [a] Workmen's Compensation offset meaningless." Buczynski, 616 F.2d at 1246. Because Buczynski stands for the proposition that an offset of pension benefits by an amount of received worker's compensation benefits is permissible, the offset enforced by the City bears a rational relation to the stated government purposes of maintaining fiscal integrity and preventing payment of duplicate benefits, and therefore withstands equal protection scrutiny.6

_____

6. The City's position is made stronger by the arbitration award's provision concerning disabled retirees whose worker's compensation benefits terminate. The award states that once a retiree's worker's compensation benefits cease, the retiree will receive the 75% pension given to all non-disabled retirees. Thus, at no point will a retired disabled Pittsburgh police officer receive less than his non-disabled counterparts.

10

Decisions from several state courts, relied upon by the Retirees, do not qualify as proper analogies or persuasive argument. See, e.g., Industrial Claim Appeals Office v. Romero, 912 P.2d 62 (Colo. 1996) (in banc ); State ex rel. Boan v. Richardson, 482 S.E.2d 162 (W. Va. 1996). The decision in Buczynski controls this case and the district court erred when it denied the City's motion for judgment as a matter of law on the equal protection claim.

B.

Similarly, the Retirees' due process claim should have been dismissed. The City concedes that the Retirees had a valid property interest in their employment and retirement benefits. We must, therefore, focus on whether the Retirees retired voluntarily or were constructively discharged. See Zepp v. Rehrmann, 79 F.3d 381, 385–386 (4th Cir. 1996). To make this determination, we examine "the surrounding circumstances to test the ability of the employee to exercise free choice." Scharf v. Department of the Air Force, 710 F.2d 1572, 1574 (Fed. Cir. 1983).

Employee resignations and retirements are presumed to be voluntary. See Angarita v. St. Louis County, 981 F.2d 1537, 1544 (8th Cir. 1992). This presumption remains intact until the employee presents evidence to establish that the resignation or retirement was involuntarily procured. Id. If an employee retires of his own free will, even though prompted to do so by some action of his employer, he is deemed to have relinquished his property interest in his continued employment for the government, and cannot contend that he was deprived of his due process rights. See Hargray v. City of Hallandale, 57 F.3d 1560, 1567 (11th Cir. 1995); Stone v. University of Md. Medical Sys. Corp., 855 F.2d 167, 173 (4th Cir. 1988). There appear to be two circumstances in which an employee's resignation or retirement will be deemed involuntary for due process purposes: 1) when the employer forces the resignation or retirement by coercion or duress, or 2) when the employer obtains the resignation or retirement by deceiving or misrepresenting a material fact to the employee. See Hargray, 57 F.3d at 1568.

11

The Retirees contend that they signed the supplemental agreements because of material misrepresentations made by Kelly Ryan in the letter she sent on behalf of Sedgwick James to an attorney for the F.O.P. The Retirees contend that Ryan's letter led them to believe that if they did not sign the supplemental agreements, they would not only lose their Heart and Lung Act benefits, but also their pension and any available worker's compensation benefits. Ryan's letter, dated December 3, 1992, stated, in relevant part:

> Enclosed are various supplemental agreements for the following claimants who are currently receiving Heart and Lung Benefits. The medical information in their files indicate that they are suffering from a permanent disability and therefore are not entitled to receive Heart and Lung benefits. . . . Please have the supplemental agreements executed and returned to me by December 14, 1992. Once the agreements are received, their wages will be reduced to the compensation rate indicated on the agreement. If anyone decides not to sign the agreement, then I will have no recourse but to file a Termination with the Heart and Lung Panel.

App. at 137. The Retirees argue that their due process rights were violated because the letter coerced them into retiring. We disagree.

Ryan's letter could not have violated the Retirees' due process rights because the Retirees had decided to retire in August 1992, four months before they saw Ryan's letter. In August 1992, the Retirees volunteered to be placed on a list of police officers who had reached 50 years of age and provided 25 years of service and who wished to retire at some time between January 1, 1992 and December 31, 1995. See, e.g., App. at 121 (letter from F.O.P. to officers describing terms of arbitration award and requirements for early retirement incentive), 123–124 (Leheny's Retirement Incentive Window Irrevocable Application Form, dated August 20, 1992). The City had the right to retire the Retirees at any time between January 1, 1992 and December 31, 1995, once all List A officers had been retired by the City. Thus, the City, by asking the Retirees to sign the supplemental agreements, had merely approved the Retirees' retirement and had made a determination that the

12

Retirees were permanently disabled. Ryan's letter indicates just that: She would seek to terminate Heart and Lung Act benefits as part of the officers' retirement on the basis of permanent disability. Although it is possible that Ryan's letter may have confused Leheny and Ramsey concerning the applicable procedures for terminating Heart and Lung Act benefits, no part of the letter would lead a reasonable police officer to believe that refusal to sign the supplemental agreements would result in termination of all benefits.

Additionally, we have held that in cases in which "a due process claim is raised against a public employer, and grievance and arbitration procedures are in place, .. . those procedures satisfy due process requirements `even if the hearing conducted by the Employer . . . [is] inherently biased.' " Dykes v. SEPTA, 68 F.3d 1564, 1571 (3d Cir. 1995) (quoting Jackson v. Temple Univ., 721 F.2d 931, 933 (3d Cir. 1983)). Grievance procedures outlined in a collective bargaining agreement can satisfy due process requirements. Id. at 1572 n.6.

Because Leheny testified that he received the arbitration award and attended a meeting in which the award was explained, he is deemed to have been aware of the applicable grievance procedure. There is no evidence to suggest that the Retirees spoke to a supervisor or representative of the F.O.P. or the City prior to signing the supplemental agreement. The Retirees had ten days to investigate the implications of refusing to sign the supplemental agreement, ten days to seek the advice of a union representative concerning available grievance procedures if they did not wish to sign the supplemental agreement. If the officers were not convinced that they were permanently disabled, their recourse was to go before an arbitrator to contest the City's determination of permanent disability. Officer Marunich followed this procedure, and as a result is not included in the Retirees' due process claim. Leheny and Ramsey did not. Not availing themselves of the process that was available to them, they may not complain now that they were deprived of due process of law.

For all of the above reasons, we conclude that the district court erred in not dismissing the due process claim.

13

C.

The district court properly granted summary judgment for the City regarding the Retirees' ADA claim. The Retirees were unable to establish that they had been victims of discrimination under the ADA.

The ADA prohibits discrimination in the terms and conditions of employment, and states in relevant part:

> No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. S 12112(a).

> [N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. S 12132. The Retirees contend that the arbitration award's early retirement incentive provision violates their right to equal compensation under the ADA.

Although the parties dispute whether the Retirees were in fact "disabled" for purposes of the ADA, we need not address this issue to conclude that the ADA claim was properly dismissed. Assuming that the Retirees were "disabled," we conclude that they failed to present evidence demonstrating that the City impinged upon their right to equal compensation.

As the district court properly noted, there is no evidence that the Retirees are receiving less than their non-disabled counterparts who receive a 75% pension without service increments. The evidence establishes that disabled retired officers, who receive a 50% pension with service increments plus a 66 2/3% worker's compensation award, actually receive greater compensation than non-disabled retirees. Indeed, the Retirees receive more than 100% of the salary they received while actively employed as police officers.

14

The Retirees argue that even though they may receive greater compensation than their non-disabled counterparts, they are nonetheless victims of ADA-based discrimination because non-disabled retirees are able to obtain new employment for any amount of compensation and, because of their disability, they are limited to the 66 2/3% worker's compensation benefits they receive.

Without considering that the Retirees would still face the possibility of receiving lesser earnings than non-disabled retirees even if they received a 75% pension because non-disabled retirees would be able to obtain employment elsewhere, we conclude that their argument is not persuasive. The Retirees are not prevented from receiving a 75% pension if they so desire. The arbitration award clearly states that every police officer who has attained 50 years of age and 25 years of service is entitled to receive a 75% pension upon retirement from the police force. Disabled officers are not required by the arbitration award to accept the 50% pension and 66 2/3% worker's compensation. There is nothing in the circumstances presented here that prevents a retired police officer from rejecting worker's compensation payments and thereby receiving the 75% pension. This is made quite clear by the express language of the arbitration award:

> In the event that such employee's worker's compensation benefits are reduced or eliminated after retirement, the employee shall be entitled to such pension enhancement as is necessary to maintain a benefit, including worker's compensation, if any, which is 75% of average monthly pay at retirement.

App. at 116.

Our decision today fits squarely with our holding in Ford v. Schering-Plough Corp., supra, which, surprisingly, the Retirees have cited as support for their position. The plaintiff in that case alleged that her former employer's insurance plan, which provided a two-year cap for benefits for mental disabilities while providing no cap for benefits for physical disabilities, violated the ADA. After determining that the ADA permits disabled individuals to sue their former employers regarding their disability benefits, we

15

addressed the disparity in available benefits for mental and physical disabilities. We held that the plaintiff had not stated a claim for violation of the ADA:

> Every Schering employee had the opportunity to join the same plan with the same schedule of coverage, meaning that every Schering employee received equal treatment. So long as every employee is offered the same plan regardless of that employee's contemporary or future disability status, then no discrimination has occurred even if the plan offers different coverage for various disabilities.

145 F.3d at 608.

In Ford court we were faced with a stricter benefit plan than the one presented here. The disability policy explicitly cut off benefits to employees with certain disabilities at the same time it continued benefits for employees with other types of disabilities. Yet, we ruled that the policy did not violate the ADA.

The pension plan and arbitration award presented here fall within the teachings of Ford. Every police officer who has attained 50 years of age and 25 years of service is permitted to receive a 75% pension upon retirement from the force; "every employee is offered the same plan regardless of that employee's contemporary or future disability status." The individual retiree is given the responsibility to decide whether or not to accept worker's compensation in lieu of a 75% pension. Because every eligible retiree is entitled to receive a 75% pension, and because each of the Retirees is permitted to receive a 75% pension when he no longer receives worker's compensation benefits, there is no violation of the ADA.

IV.

In light of the view we take, we need not address the remaining arguments presented by the parties. The judgment of the district court will be affirmed in part and reversed in part in accordance with the foregoing.

16

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit

17