NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-2286
_____

KEITHROLLIN THOMPSON,
Appellant

v.

SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY;
JEFFREY KNUEPPEL, INDIVIDUALLY AND IN HIS OWN CAPACITY;
MICHAEL LIBERI, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY;
THOMAS MARCUCCI, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY;
SHWANA ROGERS, IN HER INDIVIDUAL CAPACITY
_____

ON APPEAL FROM AN ORDER OF THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(D.C. No. 2-20-cv-00756)

District Judge: Honorable Juan R. Sanchez
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
October 17, 2022
_____

Before: GREENAWAY, JR., MATEY, and ROTH, *Circuit Judges*.

(Opinion Filed: December 27, 2022)
_____

OPINION*
_____

_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

GREENAWAY, JR. *Circuit Judge*.

Appellant KeithRollin Thompson seeks relief against his former employer, Southeastern Pennsylvania Transportation Authority ("SEPTA"), for allegedly violating his constitutional rights. Because Thompson failed to make out a 42 U.S.C. § 1983 municipal liability claim under *Monell v. Dep't of Soc. Serv. of New York*, 436 U.S. 658 (1978), we will affirm the District Court's dismissal of Thompson's Third Amended Complaint ("TAC").

## I.  BACKGROUND

### A.  Factual Background

Thompson began working for SEPTA in 1994 as a maintenance worker and became a bus operator in 2009. Throughout his tenure as a bus operator, Thompson was a member of AFL-CIO, Local 234 (the Union), and, by all accounts, an outstanding employee.

On July 3, 2018, while driving a SEPTA bus at around 12:30 a.m., Thompson hit a pedestrian. The pedestrian refused medical care and left the scene. A video camera on the bus captured the incident. After the accident, SEPTA launched an investigation and relieved Thompson of his bus operator duties for the duration of the investigation. Additionally, SEPTA initiated a three-step process to address the incident. Local 234 represented Thompson throughout that process.

SEPTA's three-step grievance process proceeded as follows:

The first step of the process, which occurred a little over a week after the incident, was an informal hearing Thompson had with his supervisor, Shwana Rogers. Rogers

2

designated the incident as "chargeable" rather than "preventable," and recommended Thompson be terminated. Thompson alleges that Rogers told him that it was "either me or you who would be fired" and that termination was not "her call" but rather the call of the Senior Director of Surface Transportation, Tom Marcucci. App. 174 ¶¶ 41, 43-44. Thompson also alleges that Rogers failed to provide him with a full explanation of the evidence supporting her conclusion that he had violated SEPTA rules.

The second step of the process was a formal hearing with Marcucci and Thompson about a month after the incident. Marcucci upheld Roger's determination that the incident was properly characterized as "chargeable." Marcucci also formally terminated Thompson's employment on August 21, 2018.[1]

The third and final step of the process occurred when Thompson appealed Marcucci's formal decision to the Labor Relations Manager, Bud Scott, Jr., who likewise upheld Thompson's termination. In his decision, which is attached to the TAC as Exhibit C, Scott recounted the safety violations leveled against Thompson. He explained that, after viewing the video, Thompson "proceeded without ensuring his intended pathway was clear," even though the "pedestrian was visible in the cross walk prior to [Thompson] entering the intersection." App. 203. Lastly, Scott concluded, based on this

---

[1] Thompson alleges that Marcucci's decision also failed to provide him with a full explanation, description, or evidentiary basis regarding his violations. According to the decision, which is attached to the TAC as Exhibit B, Marcucci considered: (1) the notice of investigation; (2) the charge sheet against Thompson; (3) a summary of Thompson's defense; (4) Thompson's accident report; (5) the transportation manager's accident investigation report; (6) the video footage of the accident; and (7) Thompson's safety and performance card.

evidence, that the incident was "the sole responsibility" of Thompson. App. 203. Hence, Scott denied Thompson's appeal.

Thompson alleges in the TAC that his termination and the resulting three-step process were the product of racial discrimination and bias. Specifically, he alleges that Marcucci tainted all three levels of the process because Marcucci served as Thompson's "judge, jury, and prosecutor" and that Scott upheld the decision based on incomplete evidence. App. 178 ¶¶ 67-68. He further alleges that SEPTA gave white bus operators (a) less discipline for similar incidents, (b) preferential treatment in the three-step grievance process, (c) different classifications of similar incidents, (d) progressive punishment and not termination, and (e) offers to transfer to other positions. Lastly, he alleges that at the time of his firing SEPTA policymakers were on notice of racial discrimination because of certain cases, union newsletters, and complaints from the NAACP.

### B. Procedural History

After Thompson filed several complaints, each of which failed to survive the motion to dismiss stage, the District Court granted SEPTA's motion to dismiss Thompson's Second Amended Complaint ("SAC") in its entirety, without prejudice. The District Court concluded that Thompson had failed to allege that SEPTA terminated his employment due to an unconstitutional municipal policy, custom, or practice as required by *Monell*, 436 U.S. at 659. The District Court also concluded that his termination was due to the actions or established policy of a final decision-making authority, and that his due process claims failed to allege that SEPTA's three-step grievance process and arbitration procedure provided insufficient due process.

4

Thompson filed a Third Amended Complaint realleging the allegations in the SAC. He added that at the time of his firing SEPTA policymakers were on notice of racial discrimination because of certain cases, union newsletters, and complaints from the NAACP. The District Court dismissed the TAC with prejudice citing the same deficiencies noted in its earlier order dismissing the SAC.

Thompson filed a timely Notice of Appeal asking this Court to overturn the District Court's Order.

## II.     JURISDICTION AND STANDARD OF REVIEW

The District Court had jurisdiction pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over Appellant's state claims under 28 U.S.C. § 1367(a). This Court has jurisdiction over the District Court's final order pursuant to 28 U.S.C. § 1291.

This Court reviews the grant of a motion to dismiss de novo. *See Doe v. Univ. of Scis.*, 961 F.3d 203, 208 (3d Cir. 2020). When reviewing a motion to dismiss under Fed R. Civ. P. 12(b)(6) a court "must accept all factual allegations in the complaint as true, construe the complaint in the light favorable to the plaintiff, and ultimately determine whether plaintiff may be entitled to relief under any reasonable reading of the complaint." *Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010). In making this determination, a court considers "only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the [plaintiff's] claims are based upon these documents." *Id.* at 230.

As made clear by the Supreme Court of the United States, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations .

. . a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554 (2007) (cleaned up).

## III. DISCUSSION

### A. Municipal Liability and Equal Protection

The TAC alleges constitutional violations under § 1983 based on SEPTA's termination of Thompson's employment. Thompson, a Black man, alleges that his termination violated the Fourteenth Amendment's Equal Protection Clause because other white bus operators who were in similar incidents were not discharged. He also alleges procedural due process violations based on SEPTA's failure to fully disclose or explain the evidence supporting his termination and the racial bias of Marcucci and others in administering that three-step grievance process.

SEPTA can be held liable under § 1983 for its illegal acts, but not for the wrongful acts of its employees or agents. *See Monell*, 436 U.S. at 691; *see also Bolden v. SEPTA*, 953 F.2d 807, 821, 830 (3d Cir. 1991) (en banc) (treating SEPTA as a municipal agency for purposes of a § 1983 claim). Hence, to state a viable claim under § 1983 complainants must do more than allege wrongdoing on the part of individual SEPTA employees. If Thompson fails to properly allege *Monell* liability, his claims can proceed no further, and we need not address the substance of his claims. *See McTernan v. City of York, PA*, 564 F.3d 636, 657-58 (3d Cir. 2009).

In this regard, a § 1983 claim against a municipality may proceed in two ways. *See Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019). A plaintiff may allege: (1) "that an

6

unconstitutional policy or custom of the municipality led to his or her injuries," or (2) that

the injuries "were caused by a failure or inadequacy by the municipality that "reflects a

deliberate or conscious choice." *Id.* (quoting *Est. of Roman v. City of Newark*, 914 F.3d

789, 798 (3d Cir. 2019)). We need only address the first method because Thompson's

TAC unequivocally demonstrates that he pursued his § 1983 claims on those grounds;

thus, the second basis is waived. *See Brenner v. Local 514, United Bhd. of Carpenters*,

927 F.2d 1283, 1298 (3d Cir. 1991) ("It is well established that failure to raise an issue in

the district court constitutes a waiver of the argument.").

### i. Policy

To establish municipal liability under the policy theory, a plaintiff must (1)

identify the challenged policy, (2) attribute it to the entity, and (3) show a causal

connection between the execution of that policy and the injury suffered. *See Kranson v.

Valley Crest Nursing Home*, 755 F.2d 46, 51 (3d Cir. 1985). Policy is made when a

decisionmaker possesses "final authority to establish municipal policy with respect to the

action issues an official policy, or edict." *Est. of Roman*, 914 F.3d at 798 (cleaned up).

The question of whether a particular employee is a final decisionmaker is

ultimately a legal rather than a factual question. *City of St. Louis v. Praprotnik*, 485 U.S.

112, 124 (1988). Thompson fails to allege a "policy" under *Monell* because he fails to

identify a final decisionmaker responsible for such a policy. Marcucci is not a final

7

decision maker.[2] Thompson's claim relies on his termination, which he consistently alleges occurred due to the racial bias of Marcucci. He claims that Marcucci tainted the three-step grievance process in several ways. First, by influencing Rogers to recommend his termination. Second, by affirming Rogers's recommendation following a formal hearing he conducted. Third, by representing SEPTA at the final step of the grievance process before a Labor Relations Manager—an independent entity separate from SEPTA.

These allegations do not address whether Marcucci was a final decisionmaker regarding Thompson's termination and SEPTA's grievance process more broadly. At certain points of the TAC, Thompson says that Marcucci had the final authority to influence Rogers and other supervisors regarding the discipline of SEPTA bus operators, to redo or reduce the charges against Thompson, and to ensure a fair process. But elsewhere in the TAC, Thompson states that Marcucci's disciplinary recommendations were not final and instead were subject to review by Scott.

The exhibits that Thompson attached to the TAC make clear that Marcucci's disciplinary decisions were not final. Thompson could have had the decision reviewed by Scott or further reviewed by a neutral arbiter (an option Thompson declined to pursue). These facts undermine any notion that Marcucci had final, unreviewable discretion to terminate Thompson or that Marcucci possessed the requisite authority to establish policy on behalf of SEPTA regarding the termination of bus operators. *See Brennan v. Norton*,

---

[2] Thompson uses interchangeably the terms "policy" and "custom" throughout the TAC and in his opening brief. These words have different definitions and pleading requirements. *Est. of Roman*, 914 F.3d at 798.

8

350 F.3d 399, 428 (3d Cir. 2003) ("[I]f a municipal employee's decision is subject to review, even discretionary review, it is not final and the employee is therefore not a policymaker for purposes of imposing municipal liability under § 1983."). Accordingly, the TAC fails to state a municipal liability claim based on policy.

## ii. Custom

Custom "can be prove[d] by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Est. of Roman*, 914 F.3d at 798.

On appeal, Thompson argues that the District Court's custom analysis was incorrect because it ignored our opinion in *Est. of Roman* and *Bielevicz v. Dubinon*, 915 F.2d 845 (3d Cir. 1990), regarding the pleading requirements necessary to establish an unlawful custom. Thompson explains that *Est. of Roman* emphasized that a plaintiff "does not need to identify a responsible decisionmaker in his pleadings. . . . Nor is he required to prove that the custom had" SEPTA's "formal approval." 914 F.3d at 798. His allegations focus on whether SEPTA's policymakers "specifically knew of and/or acquiesced in SEPTA's alleged custom and/or practice of treating" Black bus operators "less favorably than similarly situated white bus operators." Appellant's Br. at 24. Thompson maintains that the TAC presents detailed allegations identifying "several white bus operator comparators" who received more favorable treatment than Thompson, and allegations that numerous SEPTA policymakers engaged in discussions with the Philadelphia Chapter of the NAACP (Philadelphia NAACP) and with Local 234 regarding claims of racial discrimination. *Id.* at 29.

However, Thompson's factual allegations do not make out a plausible allegation of a custom of racial discrimination "so well-settled and permanent as virtually to constitute law." *Est. of Roman*, 914 F.3d at 798 (cleaned up). At most, Thompson's allegations show an individual act of discrimination. Allegations by the Philadelphia NAACP do not prove otherwise. Furthermore, Thompson's allegations were undermined by or inconsistent with the exhibits he attached to the TAC. *See Winer Family Trust v. Queen*, 503 F.3d 319, 327 (3d Cir. 2007) (stating that in evaluating a 12(b)(6) motion, a court considers the complaints' allegations and any documents attached to or specifically referenced in the complaint, if the claims are based on those documents).

For example, Thompson attached and invited the District Court to review two district court opinions, *Donaldson v. SEPTA*, 2019 WL 801965 (E.D. Pa. Feb. 21, 2019) and *Foye v. Vogelman*, 2017 WL 1150259 (E.D. Pa. Mar. 28, 2017), that described the conduct of several SEPTA bus operators involved in pedestrian incidents, each of whom allegedly received lesser punishments than Thompson. But *Donaldson* involved an alleged custom of sex discrimination—which would not have put SEPTA's policymakers on notice of a pattern or custom of race discrimination. 2019 WL 801965, at *1. Moreover, the court in *Foye* granted SEPTA summary judgment because the Black plaintiffs there failed to demonstrate a prima facie case of race discrimination. 2017 WL 1150259, at *6. Thus, neither case assists Thompson in proving allegations of a custom of race discrimination.

Thompson's allegations that his union and the Philadelphia NAACP put SEPTA "on notice" do not rescue his custom arguments. Thompson claims his union put SEPTA

10

on notice through separate allegations published in several union newsletters and that in 2018, SEPTA officials and the Philadelphia NAACP discussed "claims by numerous SEPTA employees that they were subject" to a toxic "work environment that involved racial discrimination." App. 185-86. The union newsletters that Thompson incorporates allege that SEPTA supervisors commonly used racist language to describe employees, and calls for independent investigations of "biased, rude, and incompetent SEPTA managers." App. 248. These union newsletters are unproven allegations and do not themselves include allegations regarding a racially motivated disciplinary custom for bus operators. The Philadelphia NAACP's vague, unproven accusations, without more, of racial discrimination in the firing process of Black SEPTA bus operators, do not rise to the level of custom "so well-settled and permanent as virtually to constitute law." *Est. of Roman*, 914 F.3d at 798.

In fact, Thompson's allegations regarding meetings between SEPTA and the Philadelphia NAACP to discuss racial discrimination undermine his claim that SEPTA maintained an unlawful custom of race discrimination because the union expressly disavowed any allegations of race discrimination during the grievance process. *See* App. 254 ("[Local 234] also reviewed a number of cases promoted by the NAACP as examples of SEPTA's discriminatory practices[;] however, in each case the facts showed that SEPTA had just cause to discipline or discharge the effected employees. Stated another way, the discipline imposed in the cases cited by the NAACP had nothing to do with racial or gender discrimination.").

11

Prior lawsuits alleging racial discrimination and accusations of improper conduct by an outside organization alone are not enough to state a claim of unlawful custom. *See Beck v. City of Pittsburgh*, 89 F.3d 966, 973 n.7 (3d Cir. 1996) (noting that isolated events, such as one prior complaint for excessive force against each of the officers involved, without more, do not rise to the level of a custom of abusive behavior).

## B. Due Process

Thompson also claims that he has properly pled a deprivation of his due process rights.[3] We disagree. As we have previously held, "where an adequate grievance/arbitration procedure is in place and is followed, a plaintiff has received the due process to which he is entitled to under the Fourteenth Amendment." *Dykes v. SEPTA*, 68 F.3d 1564, 1565 (3d Cir. 1995).

As we laid out above, SEPTA has a three-step grievance procedure in place. The first step, an informal hearing, applied to Thompson when he spoke with Rogers about his termination. The second step occurred when Marcucci formally heard and formally terminated Thompson. Finally, the third step in the grievance procedure was satisfied when Thompson appealed Marcucci's formal decision to the Labor Relations Manager.

---

[3] Although some of Thompson's claims sound in substantive due process, such as the purported leniency for white bus drivers, the heart of his claims involve questions of procedural due process. These alleged substantive due process claims have less to do with due process and more to do with *Monell*. Thompson's claims that raise the issue of favorable treatment are used to inform his *Monell* claims, *e.g.*, SEPTA has a policy for treating white bus drivers more favorably. Thus, our due process analysis is predicated on the law of procedural due process.

The lower court found that "each level of the grievance procedure was heard by a different SEPTA manager, and the SEPTA Labor Relations Manager conducted an independent review of the previous grievance step." App. 14. We refuse to overturn these factual findings made by the District Court. We instead hold, as we have done previously, that Thompson was not entitled to any more process than this. *See Dykes*, 68 F.3d at 1572 n.6 (3d Cir. 1995) ("In so holding, we re-confirm our agreement with the many courts holding that grievance procedures outlined in collective bargaining agreements can satisfy due process requirements.").

To the extent that Thompson argues that this procedure was biased against him, we still are unable to find in his favor given the law of this Court. As we have held, the question is not whether the hearings themselves are "inherently biased," but whether a plaintiff has received the due process required by the constitution. *Jackson v. Temple Univ. of Com. Sys. of Higher Educ.*, 721 F.2d 931, 933 (3d Cir. 1983). Indeed, a grievance procedure, on its face, "can satisfy due process requirements." *Leheny v. City of Pittsburgh*, 183 F.3d 220, 228 (3d Cir. 1999). We find that SEPTA's grievance procedure complies with such constitutional protections.

## IV.    CONCLUSION

Accordingly, we will affirm the District Court's order, dismissing the TAC with prejudice. [4]

---

[4] The District Court ruled that Appellant's case should be dismissed with prejudice. Appellant did not raise the issue of dismissal with prejudice in his brief nor does he ask for another opportunity to amend the complaint. Therefore, we need not address whether after many amendments, Thompson merits yet another bite at the apple.