**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 22-2223

———

COLLEEN BEHM,

Appellant

v.

MACK TRUCKS, INC.; UNITED AUTO WORKERS LOCAL 677

———

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 5-21-cv-02500)
District Judge: Honorable John M. Gallagher

———

Submitted Under Third Circuit L.A.R. 34.1(a)
April 13, 2023

Before: CHAGARES, <u>Chief Judge</u>, SCIRICA and AMBRO, <u>Circuit Judges</u>

(Opinion filed: May 1, 2023)

———

OPINION[*]

———

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

AMBRO, Circuit Judge

Appellant Colleen Behm worked on the production line at Mack Trucks, Inc. ("Mack") for three years, half of which she spent on paid medical leave for a variety of medical issues. When her doctors finally cleared her to return to work, she emailed her resignation instead. Still, she sued her former employer for failure to accommodate her disabilities and retaliation under the Americans with Disabilities Act ("ADA") and the Pennsylvania equivalent. The District Court granted summary judgment for Mack because (1) it had approved every accommodation Behm requested and (2) she voluntarily resigned, meaning she did not face any adverse employment action. We agree with the District Court's reasoning and thus affirm.

## I.

Behm started working on the production line at Mack in January 2018. Eight months later, she injured her shoulder at work and took three months of paid medical leave. She returned to work for three weeks before she again applied for paid medical leave, this time for depression and anxiety related to domestic violence threats. Mack granted leave for a month and a half.

In January 2019, Behm returned to work for four months, but in May she was injured on the job when she hit her head on a bracket. She alleges that Mack's internal doctors harassed her by ordering her to take an ambulance to the hospital immediately. Doing so would have made Behm miss her kids' school pickup, so she refused. Instead, she went to the hospital later that day, and the doctor there diagnosed her with a concussion and told her to rest for 48 hours.

2

Two days later, within the 48-hour rest period, Mack asked Behm to come into work to be examined by its medical department. She did so and had a four-hour examination. Mack's medical department cleared her to return to work with accommodations, but the next day she received severe injuries to her head from a domestic assault causing another concussion. Behm applied for an open-ended paid medical leave, which Mack approved. She remained on leave through the rest of the summer.

In August 2019, Behm saw a neurologist who told her not to return to work until November. But Mack found out that she was working a modeling job while on paid leave, so it asked her to get a second opinion on her ability to return to work from a neurologist of Mack's choosing. The second neurologist cleared Behm to return, so she did the next day. On her return, she was placed in the "Mack in Motion" division, in which workers build carts that are used to move parts and tools more efficiently. Behm argues this was a monotonous and undesirable job reserved for misfits. But the pay and hours were the same as her previous position. After three months in this division, she was transferred back to the production line.

Then, in early 2020, Mack announced that it was going to lay off over 220 employees at the facility. As a result, it had to move many workers from first shift to second shift. The collective bargaining agreement ("CBA") between Mack and its employees' union required it to reallocate shifts based on seniority. In February 2020, Mack moved Behm to second shift, based on her seniority calculated by the rules set out in the CBA. She requested transfer back to first shift, but her stated reason for the

request was because she could not find childcare. She never said the switch was needed for a medical reason. Mack denied Behm's request because she did not have enough seniority to bump another worker off first shift.

Behm then missed work for a few days because she was sick. When she returned, Mack issued her a corrective action for the missing days. This caused Behm to have a panic attack and leave work early. She requested another paid medical leave, which Mack granted with multiple extensions through February 2021 (a year later). Finally, in February 2021, Behm's own doctors cleared her to return to work. Rather than return, she emailed her resignation.

In July 2020, while on paid medical leave, Behm filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging violations of the Americans with Disabilities Act ("ADA") and other statutes not at issue on appeal. The EEOC sent her a dismissal and notice of rights, so she sued Mack in the District Court for the Eastern District of Pennsylvania for (1) failure to accommodate under the ADA and the Pennsylvania state equivalent—Pennsylvania's Human Relations Act ("PHRA")—and (2) retaliation in the form of constructive discharge under the ADA. After the parties completed discovery, Mack moved for summary judgment, and the Court granted the motion. Behm timely appealed.[1]

---

[1] The District Court had jurisdiction under 28 U.S.C. § 1331. We have appellate jurisdiction to review its final order under 28 U.S.C. § 1291. We review *de novo* the Court's order granting summary judgment. *Matheis v. CSL Plasma, Inc.*, 936 F.3d 171, 176 (3d Cir. 2019). We apply the same test the District Court would use, meaning we review the facts in the light most favorable to the non-movant and grant summary

## II.

On appeal, Behm argues broadly that the District Court erred in granting summary judgment on the failure-to-accommodate and retaliation claims.

    A. The District Court properly granted summary judgment on the failure-to-accommodate claims.

The ADA requires employers to "mak[e] reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business." 42 U.S.C. § 12112(b)(5)(A). To establish a prima facie case, a plaintiff must show that (1) the employer knew about the employee's disability, (2) the employee requested accommodations or assistance, (3) the employer did not make a good-faith effort to assist the employee, and (4) the employee could have been reasonably accommodated. *Williams v. Phila. Hous. Auth. Police Dep't*, 380 F.3d 751, 772 (3d Cir. 2004) (internal quotation and citations omitted).

Behm's failure-to-accommodate claim cannot stem from any of her requests for paid medical leave. That is so because every time Behm requested leave to address her medical conditions, Mack granted the request. And every time it only asked her to return to work (with proper accommodations) after she was cleared by a doctor. Here, Behm

---

judgment if the movant shows "there is no genuine dispute as to any material fact" and it "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

5

fails under the third element of a claim for failure to accommodate because the employer did "make a good-faith effort to assist the employee." *Williams*, 380 F.3d at 772.

The only request Mack denied was to switch the timing of Behm's shifts (to move back to first shift from second shift). But this denial cannot be the basis of her ADA claim because she never requested an accommodation for a medical reason. Although an accommodation request need not follow any specific format or use any particular language, it must at least "make clear that the employee wants assistance for . . . her disability." *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 313 (3d Cir. 1999). Here, Behm told her employer the reason she requested to switch shifts was due to scheduling conflicts with the time she had to pick her daughter up from school, not for any medical reason that would implicate the ADA. App. 243-44; 511. Thus the employer had no way of knowing that the request was for an accommodation of a disability, and it cannot accommodate that which it does not know about.

For these reasons, the District Court properly granted summary judgment for Mack on the failure-to-accommodate claims under the ADA and the PHRA.

   B. The District Court properly granted summary judgment on the retaliation claim.

The ADA also prohibits retaliation. *See* 42 U.S.C. § 12203(a) ("No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter."). A necessary element of retaliation is that the employee "suffered an adverse employment action because of [her] disability." *Turner v. Hershey Chocolate U.S.*, 440 F.3d 604, 611 (3d Cir. 2006).

6

At the District Court, Behm argued Mack took many adverse employment actions against her, but on appeal she argues only that her resignation was an adverse employment action because it was a constructive discharge. Typically, voluntary resignations are not adverse actions. *Leheny v. City of Pittsburgh*, 183 F.3d 220, 227 (3d Cir. 1999). But an employee can still prove retaliation if she resigns when the employer "permitted conditions so unpleasant or difficult that a reasonable person would have felt compelled to resign." *Connors v. Chrysler Fin. Corp.*, 160 F.3d 971, 974 (3d Cir. 1998).

To meet this burden, Behm says she was compelled to resign because of (1) her placement in the Mack in Motion division for three months, (2) harassment for being ordered to take an ambulance to the hospital immediately after receiving a concussion and being examined for four hours by the medical department when she should have been resting, (3) Mack making her get a second opinion from a new neurologist after she had been on paid medical leave for months, and (4) placement on the second shift.

The District Court thoroughly explained why these conditions were not sufficient to meet the high burden of showing that the workplace was so unpleasant that a reasonable person would be compelled to resign. App. 15-16. Some of them (like ordering her to go to the hospital after receiving a concussion) were typical safety measures and others (like placing her on second shift) were decisions by her union's CBA, not a decision by Mack. As such, Behm could not "convince a reasonable jury that [her] decision to retire was anything but reasoned and voluntary." *Connors*, 160 F.3d at 976.

* * *

7

We thus affirm the judgment of the District Court.