**Stephen NUNN, Plaintiff–Appellee,**

v.

**John W. LYNCH, Defendant–Appellant,**

No. 03–6180.

United States Court of Appeals, Sixth Circuit.

Sept. 8, 2004.

---

G. Thomas Nebel, Law Offices of Tom Nebel, Nashville, TN, for Plaintiff–Appellee.

James G. Thomas, William T. Ramsey, Neal & Harwell, Nashville, TN, for Defendant–Appellant.

Before MARTIN and ROGERS, Circuit Judges; and BELL, District Judge.*

BELL, District Judge.

This is an appeal from the district court's denial of a motion to dismiss the Plaintiff Stephen Nunn's 42 U.S.C. § 1983 procedural due process claim against Defendant John W. Lynch. For the reasons that follow, we reverse the district court's order of August 27, 2003, and remand with instructions for the district court to grant the motion and to dismiss, with prejudice, the action against Defendant Lynch on the basis of Lynch's qualified immunity.

## I.

Plaintiff Stephen Nunn, an attorney employed by the Metropolitan Government of Nashville and Davidson County, Tennessee, filed a § 1983 constitutional claim against his supervisor, Defendant John W. Lynch, alleging that Lynch constructively discharged Nunn without notice or a hearing in violation of Nunn's right to procedural due process. Lynch filed a motion under FED. R. CIV. P. 12(b)(6) to dismiss the complaint against him for failure to state a claim upon which relief can be granted or in the alternative on the basis of qualified immunity.

In a memorandum and order dated August 27, 2003, the district court denied Lynch's motion to dismiss on the basis that the qualified immunity argument was premature. Lynch appealed. Lynch con-

---

* The Honorable Robert Holmes Bell, Chief United States District Judge for the Western District of Michigan, sitting by designation.

tends that the district court erred in denying his motion to dismiss on the basis of qualified immunity. He contends that the complaint's factual allegations against him, taken as true and viewed in the light most favorable to Nunn, nevertheless fail to describe conduct rising to the level of a constitutional violation cognizable under 42 U.S.C. § 1983. We agree.

## II.

■ Although Lynch's appeal is interlocutory in nature, because the district court's decision rejecting Lynch's claim to qualified immunity raises a question of law, we have jurisdiction to consider the appeal notwithstanding the absence of a final judgment. *See Risbridger v. Connelly*, 275 F.3d 565, 568 (6th Cir.2002). We review the denial of qualified immunity *de novo*. *Id.* at 568–69 (citing *Blake v. Wright*, 179 F.3d 1003, 1007 (6th Cir. 1999)). Where, as here, the defendant is appealing the denial of qualified immunity, we must accept the facts alleged by the plaintiff for purposes of the appeal. *Blake v. Wright*, 179 F.3d 1003, 1008 (6th Cir. 1999) (citing *Berryman v. Rieger*, 150 F.3d 561, 563 (6th Cir.1998)).

The doctrine of qualified immunity shields government officials performing discretionary functions from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Application of the doctrine involves a two-step inquiry:

> First, the court must determine whether, based upon the applicable law, the facts viewed in the light most favorable to the plaintiffs show that a constitutional violation has occurred. If the court finds a constitutional violation, it must

then consider whether the violation involves " 'clearly established constitutional rights of which a reasonable person would have known.' "

*Burchett v. Kiefer*, 310 F.3d 937, 942 (6th Cir.2002) (quoting *Dickerson v. McClellan*, 101 F.3d 1151, 1158 (6th Cir.1996)).

"The threshold inquiry a court must undertake in a qualified immunity analysis is whether plaintiff's allegations, if true, establish a constitutional violation." *Hope v. Pelzer*, 536 U.S. 730, 736, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002) (citing *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).

The district court determined that dismissal on the grounds of qualified immunity was premature because the record was unclear as to whether plaintiff was denied a hearing due to the actions of the defendants or whether the lack of a hearing was the result of Nunn's failure to pursue his state remedies. The error in the district court's analysis is its failure to engage in the threshold inquiry under *Saucier*: whether the plaintiff's allegations, if true, establish a constitutional violation. Our first question, then, is to determine whether, reading the complaint in the light most favorable to Nunn, Nunn has described conduct by Lynch that violated Nunn's constitutional right to due process.

Nunn is an attorney who had been employed by the Metropolitan Government since 1989. In 2002 he was employed as Contract Administrator in the Metropolitan Government's Department of Public Works. Nunn's employment rights were governed by the "Metropolitan Govern-

ment of Nashville and Davidson County Civil Service Rules" and the Personnel Policy Manual promulgated under those rules. Those rules provide that:

No employee in the classified service may be terminated, or suspended from the service, or demoted in pay grade, except for cause and after a hearing before the department head or other appointing authority, with prior reasonable notice, in writing, of the proposed action and the reasons therefore. . . .

During an eight-month period from January 16, 2002, until September 13, 2002, Lynch was Acting Director of the Department of Public Works and became responsible for rating Nunn's performance. On June 28, 2002, Lynch prepared an evaluation of Nunn's performance. Nunn alleges that the evaluation was flawed because Lynch failed to consult with Nunn's previous supervisor; Lynch rated Nunn on supervisory factors that were not relevant to Nunn's position; Lynch left a portion of the form blank; Lynch inserted false and malicious statements about Nunn in knowing or reckless disregard for the truth; and Lynch threatened to demote Nunn. Nunn alleges that as a result of the improper evaluation he did not receive an increase in salary which he would otherwise have received.

Nunn also alleges that Lynch engaged in a pattern of harassment and intimidation: he missed a meeting with Nunn and then attempted to make it appear that it was Nunn who missed the meeting; he criticized Nunn, addressed him in disrespectful and inappropriate terms, and attempted to embarrass and intimidate Nunn by making false accusations against him at a meeting on June 3, 2002; he instructed others not to assist Nunn; he

assigned Nunn to an inadequate and degrading workspace; and he directed abusive or profane language toward Nunn and other employees on numerous occasions.

Nunn alleges that as a result of Lynch's conduct Nunn was compelled to resign on September 23, 2002. Two months after his resignation, Nunn requested Defendants [1] to provide information that would enable Nunn to proceed with a hearing at which he could confront the witnesses and evidence against him in the performance evaluation. Defendants denied his request. Nunn alleges that Lynch's conduct violated his rights to procedural due process.

The Fourteenth Amendment prohibits the deprivation of "life, liberty, or property" without due process of law. We undertake a two-step analysis when considering claims for the violation of due process rights. *Mitchell v. Fankhauser*, 375 F.3d 477, 480 (6th Cir.2004) (citing *Leary v. Daeschner*, 228 F.3d 729, 741–42 (6th Cir. 2000)). First, we must determine whether the plaintiff has a property interest entitled to due process protection. If he has such a protected property interest, then we must determine what process is due. *Id.*

"Property interests protected by the Constitution stem from an independent source, such as state law, and are not created by the Constitution itself." *Sharp v. Lindsey*, 285 F.3d 479, 487 (6th Cir. 2002) (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985)). Nunn alleges deprivation of a property interest in continued employment. "Government employment amounts to a protected property interest when the employee is 'entitled' to continued employment." *Bailey v. Floyd*

---

1. Nunn filed this suit against Lynch and the Metropolitan Government of Nashville and Davidson County.

*County Bd. of Educ.,* 106 F.3d 135, 141 (6th Cir.1997). *See also Parker v. Bd. of Regents of Tulsa Jr. Coll.,* 981 F.2d 1159, 1161 (10th Cir.1992) ("There is no dispute that plaintiff had a constitutionally protected property interest in employment because she could only be discharged pursuant to her employee handbook for just cause."). As a civil service employee, Nunn could not be terminated, suspended, or demoted without good cause. Nunn accordingly has alleged the deprivation of a protected property interest in his continued employment.

The issue then is what process was due. The vast majority of Nunn's allegations address alleged deficiencies in his evaluation. Nunn cannot point to any law or contract provision that would create a protected property interest in a good evaluation, in an evaluation on a particular form, in an evaluation he agrees with, or even in an accurate evaluation. Instead, Nunn characterizes his due process claim as arising out of a constructive discharge intentionally engineered so as to deprive him of his rights to a due process hearing.

A constructive discharge may constitute a deprivation of property within the meaning of the Fourteenth Amendment. *See, e.g., Parker,* 981 F.2d at 1162 ("If, however, her resignation was so involuntary it amounted to a constructive discharge, defendants did deprive her of her property interest without due process."); *Stone v. Univ. of Maryland Med. Sys. Corp.,* 855 F.2d 167, 173 (4th Cir.1988) ("If, on the other hand, Stone's 'resignation' was so involuntary that it amounted to a constructive discharge, it must be considered a deprivation by state action triggering the protections of the due process clause."); *Findeisen v. North East Indep. Sch. Dist.,* 749 F.2d 234, 236–39 (5th Cir.1984) (holding that constructive discharge claim set forth the type of deprivation of proper-ty for which due process required a predeprivation hearing); *Parrett v. Connersville,* 737 F.2d 690, 694 (7th Cir.1984) (holding that if the plaintiff was constructively discharged, he was deprived of property within the meaning of the Fourteenth Amendment). *See also Burt v. Bd. of Educ. for the City of Grand Rapids,* No. 93–1507, 35 F.3d 565, 1994 U.S.App. LEXIS 32541 (6th Cir. Aug.26, 1994) (unpublished) (suggesting that a § 1983 procedural due process claim can be based on a constructive discharge).

A constructive discharge occurs when "working conditions were so unpleasant and unreasonable that a reasonable person in the employee's shoes would have felt compelled to resign." *Ford v. Gen. Motors Corp.,* 305 F.3d 545, 554 (6th Cir.2002) (quoting *Yates v. Avco Corp.,* 819 F.2d 630, 636–37 (6th Cir.1987)). "A plaintiff must show that the employer intended and could reasonably have foreseen the impact of its conduct on the employee." *Id. See also Marks v. Newcourt Credit Group, Inc.,* 342 F.3d 444, 459 n. 4 (6th Cir.2003) (same).

Nunn admits in his pleadings that he resigned. Employee resignations and retirements are presumed to be voluntary. *Leheny v. City of Pittsburgh,* 183 F.3d 220, 227 (3d Cir.1999). An apparently voluntary resignation does not rise to the level of constructive discharge unless it is objectively reasonable for the employee to leave under the circumstances. *Trigano v. Bain & Co.,* 380 F.3d 22 (1st Cir.2004). "If an employee retires of his own free will, even though prompted to do so by some action of his employer, he is deemed to have relinquished his property interest in his continued employment for the government, and cannot contend that he was deprived of his due process rights." *Leheny,* 183 F.3d at 227. *See also Parker,* 981 F.2d at 1162 ("If she resigned of her own free will, even though doing so due to actions of

defendants, she voluntarily relinquished her property interest and was not deprived of her property interest without due process."). *Cf. Terban v. Dep't of Energy*, 216 F.3d 1021, 1024 (Fed.Cir.2000) (resignations by federal government employees are presumed voluntary).

There are two circumstances in which an employee's resignation will be deemed involuntary for due process purposes: 1) when the employer forces the resignation or retirement by coercion or duress, or 2) when the employer obtains the resignation or retirement by deceiving or misrepresenting a material fact to the employee. *Leheny*, 183 F.3d at 228. Because Nunn does not allege that his resignation was procured by a misrepresentation of a material fact, in order to overcome the presumption that his resignation was voluntary, he must allege that his employer forced him to resign by coercion or duress and, thereby, abrogated his ability to exercise free choice.

■ We express no opinion on whether or not the kind of conduct attributed to Lynch—giving a government lawyer a negative and false performance evaluation, criticizing him in public, treating him in a disrespectful manner, and giving him undesirable office space—could ever be sufficient to make out a claim of constructive discharge. It is important to note that this conduct is not sufficient to constitute constructive discharge in this case because Nunn admits in his pleadings that he resigned on September 23, 2002, 10 days after Lynch, the alleged cause of Nunn's unreasonable working conditions, ceased to be the Acting Director of the Department of Public Works. In other words, Lynch was no longer supervising Nunn or working in Nunn's department when Nunn resigned. How might a reasonable person have felt compelled to resign after the cause of the difficult working conditions

had left? Under these facts Nunn cannot overcome the presumption that his resignation was voluntary. Nunn's constructive discharge claim accordingly fails on the facts alleged in his complaint.

In the absence of a constructive discharge, Nunn has failed to show the deprivation of a property right in violation of the Due Process Clause.

Moreover, even assuming Nunn had stated a claim of constructive discharge, a deprivation of property is only the first prong of a due process claim. Nunn must also show that the deprivation was accomplished without the process that was due under the law. *Mitchell*, 375 F.3d at 480. *See also Parrett*, 737 F.2d at 694 (holding that if the plaintiff was constructively discharged, "the only question would then be whether he was given due process of law.").

Nunn complains that he was denied a pre-deprivation hearing and a post-deprivation hearing. Because Nunn was not terminated, suspended, or demoted, he did not have a right to a pre-deprivation hearing under the municipality's civil service rules. The rules do not provide for a hearing when an employee resigns. Even if the employee can later show that his resignation was not voluntary, the employer cannot be required to give notice before an employee takes what appears to be a voluntary act. Moreover, the Supreme Court has noted that "when deprivations of property are effected through random and unauthorized conduct of a state employee, predeprivation procedures are simply 'impracticable' since the state cannot know when such deprivations will occur." *Hudson v. Palmer*, 468 U.S. 517, 533, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984).

On the other hand, if Nunn's resignation was a constructive discharge, he arguably had a right to a post-deprivation hearing.

However, Nunn has not alleged that the City denied a request for a post-deprivation hearing. He has not alleged that he ever requested a hearing. He has merely alleged that Defendants denied his attorney's request for information necessary to proceed with a hearing. The November 27, 2002, letter from Nunn's attorney that is attached to the complaint in support of this assertion merely requests the City's response to questions concerning the June 28, 2002, performance evaluation.

Even if we were to interpret Nunn's allegations as the denial of a request for a post-deprivation hearing, Nunn has still failed to state a deprivation of due process because he has not alleged the inadequacy of state post-deprivation remedies. The Supreme Court has held that the "unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful [state] postdeprivation remedy for the loss is available." *Hudson*, 468 U.S. at 533, 104 S.Ct. 3194. "If satisfactory state procedures are provided in a procedural due process case, then no constitutional deprivation has occurred despite the injury." *Jefferson v. Jefferson County Pub. Sch. Sys.*, 360 F.3d 583, 587–88 (6th Cir.2004). Accordingly, in order to state a procedural due process claim under section 1983 "the plaintiff must attack the state's corrective procedure as well as the substantive wrong." *Meyers v. City of Cincinnati*, 934 F.2d 726, 731 (6th Cir.1991) (quoting *Vicory v. Walton*, 721 F.2d 1062, 1066 (6th Cir.1983)). A plaintiff "may not seek relief under Section 1983 without first pleading and proving the inadequacy of state or administrative processes and remedies to redress her due process violations." *Jefferson*, 360 F.3d at 588. *See also Marino v. Ameruso*, 837 F.2d 45, 47 (2d Cir.1988) ("Although one need not exhaust state remedies before bringing a Section 1983 action claiming a violation of procedural due process, one must nevertheless prove as an element of that claim that state procedural remedies are inadequate.").

A municipality's refusal to provide a post-termination hearing does not constitute a due process violation where an adequate state corrective judicial process exists. *Meyers*, 934 F.2d at 731. In *Meyers* a municipal civil service commission refused to allow an employee to be heard because it interpreted the employee's retirement as voluntary. We held that the plaintiff had not shown a procedural due process violation where the plaintiff attacked the municipal administrative hearing process, but not the state's judicial process for the correction of errors by administrative agencies. *Id.* Nunn has not alleged the inadequacy of the state's judicial process for the correction of errors by administrative agencies. Accordingly, Nunn has failed to allege a constitutional due process claim.

Because no constitutional right would have been violated were the allegations in Nunn's complaint established, there is no necessity for further inquiries concerning qualified immunity. *See Saucier*, 533 U.S. at 201, 121 S.Ct. 2151. Lynch is entitled to qualified immunity, and the district court's denial of Lynch's motion to dismiss must accordingly be reversed.

## IV.

For the reasons stated herein, the district court's order of August 27, 2003, is REVERSED and REMANDED with instructions to the district court to grant the motion and to dismiss the action against Defendant Lynch with prejudice on the basis of Lynch's qualified immunity.