NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0325n.06

Case No. 23-1354

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| ERIN KOSCH, | ) | **FILED** |
| Plaintiff-Appellant, | ) | Jul 26, 2024 |
| | ) | KELLY L. STEPHENS, Clerk |
| v. | ) | |
| | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| TRAVERSE CITY AREA PUBLIC SCHOOLS, | ) | COURT FOR THE WESTERN |
| et al., | ) | DISTRICT OF MICHIGAN |
| | ) | |
| Defendants-Appellees. | ) | O P I N I O N |
| | ) | |

Before: BOGGS, READLER, and DAVIS, Circuit Judges.

DAVIS, Circuit Judge.    Traverse City Area Public Schools ("TCAPS") opened an investigation into the alleged misconduct of a tenured high school teacher, Erin Kosch, after parents complained about a viral video clip that showed Kosch using profane language to describe a recent student incident. Dr. Cindy Berck headed the investigation for TCAPS. Just one day into the investigation, Kosch resigned from her position. Months later, she filed this lawsuit under 42 U.S.C. § 1983, alleging, among other things, that Berck and TCAPS forced her to resign in violation of her federal due-process rights. The district court granted the defendants' motion for summary judgment. Kosch short-circuited any process to which she may have been entitled. Thus, for the following reasons, we AFFIRM.

No. 23-1354, *Kosch v. Traverse City Area Pub. Schs., et al.*

I.

Erin Kosch accrued over 27 years of service as a tenured teacher in Michigan. During the 2020-2021 academic year, Kosch worked for TCAPS teaching at Central High School in Traverse City. Due to the COVID-19 pandemic, TCAPS offered students remote instruction at various points during that academic year, including on October 22, 2020. On that day, Kosch taught virtual classes from her home. Minutes before the start of Kosch's sixth-hour class, she opened her virtual classroom—unaware that her computer's microphone was active and broadcasting a conversation she was having with her husband. Kosch was also unaware that one of her students, L.H., had joined the virtual classroom. When L.H. heard Kosch use expletives to describe various students, she began to record Kosch's conversation. The recorded video shows Kosch identifying one of her students, M.B., by his full name, and describing M.B. as a "culprit" in a recent incident involving inappropriate comments shared in a virtual classroom's chatroom. Kosch eventually realized that her microphone was active and muted herself.

Kosch's actions were too late, however, to limit the reach of her conversation to the confines of her home. Within days, the video appeared on the internet and went "viral" online, attracting the attention of local news media and concerned parents. TCAPS quickly received a complaint about the video from a parent. Finding that the parent's complaint raised serious allegations, Defendant Dr. Cindy Berck, Executive Director of Human Resources and Labor Relations for TCAPS, instructed school administrators to place Kosch on paid suspension and opened an investigation into the matter. Berck followed up with a written memorandum to Kosch, confirming the paid suspension and advising Kosch that a meeting would follow to start the investigation. Kosch understood that she would be interviewed about what had transpired in and as a result of the video.

Berck scheduled the meeting for October 27, 2020—the day after TCAPS received the parent's complaint and suspended Kosch—and exchanged a series of emails with Kosch to discuss meeting logistics. In the course of these exchanges, Berck informed Kosch that the meeting was a "due process meeting," that the investigation "could result in disciplinary action," and that Kosch could choose to have a union representative attend the meeting with her. (R. 24-8, PageID 262). Kosch did not oppose having a union member present but expressed concerns about whether the union would represent her interests given that she was not a dues-paying member. She requested that her attorney be permitted to attend the meeting. Berck denied Kosch's request based on the administration's purported practice of not having attorneys attend preliminary meetings; she advised Kosch that she was free to discuss next steps with her attorney on her own time. Berck then invited the union president, Allyson McBride-Culver, to attend the meeting on Kosch's behalf. McBride-Culver assured Kosch that, despite Kosch's non-union member status, the union would defend Kosch's employment contract.

At the October 27 meeting, Berck informed Kosch that she was being investigated to determine whether her conduct, as captured on the video, violated the Family Educational Rights and Privacy Act, 20 U.S.C. § 1232g; 34 C.F.R Part 99 ("FERPA")[1] or any TCAPS policies. Berck also advised Kosch that a finding of such a violation could provide grounds for discipline. Concerned about her professional reputation and pension benefits, Kosch asked about her options. In response, Berck discussed two "extreme" outcomes that could occur if TCAPS were to determine that Kosch had committed punishable misconduct (R. 24-8, PageID 296): Kosch could resign in good standing and provide a statement about the incident that included a rebuttal, or the

---

[1] The FERPA, and its accompanying regulations, govern access to certain student education records, including disciplinary records. 20 U.S.C. § 1232g; 34 CFR Part 99.

administration could recommend that tenure charges be filed with the Board of Education ("Board"). If tenure charges were filed, the Board would vote to either terminate or retain Kosch's employment. But, as Kosch would later testify, she understood that nothing "had been determined" by TCAPS as of yet, and she simply knew there was a "chance that [disciplinary action] could happen." (R. 28-2, PageID 626, 630). After this discussion, the meeting concluded and was set to resume the next day.

Shortly after Kosch's meeting with Berck, a student from a different school emailed Kosch about the video to scold her about her behavior. Upset and suddenly aware of how widespread the video had become, Kosch emailed Berck to tender her resignation within hours of receiving the email. Kosch followed up that same day with a formal resignation letter to Berck. Neither the resignation email nor the formal letter included a rebuttal statement.

Months later, Kosch filed this lawsuit against TCAPS and Berck, alleging that she had been constructively discharged, in violation of her due-process rights.[2] Defendants moved for summary judgment, arguing that Kosch's claims failed on the merits and that qualified immunity shielded Berck from suit. Kosch opposed the motion, arguing that the "extreme" outcomes Berck discussed during the October 27 meeting were, in fact, an ultimatum: Resign in good standing or risk termination and a stained professional record. Berck enforced this ultimatum, says Kosch, by (1) failing to provide Kosch with a written list of the charges pending against her (2) misleading Kosch to believe that she had violated the FERPA and that she would face difficulty obtaining new employment if she were terminated; (3) barring Kosch from having an attorney at the October 27 meeting; (4) inviting McBride-Culver to defend Kosch's contract, knowing that McBride-Culver

---

[2] Kosch filed her three-count complaint in state court, alleging breach of contract, intentional infliction of emotional distress, and violations of state and federal due process protections. Defendants removed the case to federal court, and the district court declined to exercise supplemental jurisdiction over Kosch's state-law claims. Accordingly, only Kosch's federal due process claims against Berck and TCAPS survived and are at issue on appeal.

had a conflict of interest; and (5) using the video, which had been recorded and disseminated in violation of state eavesdropping laws, to intimidate Kosch. Kosch argued that, given these circumstances, she had no reasonable option but to resign so that she could obtain new employment and maximize her pension benefits. Kosch also argued that Berck was not entitled to qualified immunity because these issues raised genuine disputes of material fact for many of the same reasons.

The district court agreed with Defendants that there was no genuine dispute of material fact and rejected each of Kosch's arguments without expressly addressing the applicability of qualified immunity. Kosch timely appealed.

## II.

We review de novo the district court's grant of summary judgment. *Green Genie, Inc. v. City of Detroit*, 63 F.4th 521, 526 (6th Cir. 2023). Summary judgment is proper when no genuine dispute of material fact exists, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The central issue is whether the evidence presents a sufficient disagreement to require submission of Kosch's claims to a jury or whether the evidence is so one-sided that the Defendants must prevail as a matter of law. *See id.* at 251–52. Where the movant establishes the lack of a genuine issue of material fact, the burden of demonstrating the existence of such an issue shifts to the non-moving party to come forward with "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). A non-movant can establish the existence of such specific facts through "the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits, if any" in the record. *Id.* at 323 (quoting Fed. R. Civ. P. 56(a)).

III.

We begin our analysis with a de novo review of Berck's qualified immunity defense. *Id.*

*Qualified Immunity.* Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "A plaintiff who brings a § 1983 action against such an official bears the burden of overcoming the qualified immunity defense." *DiLuzio v. Village of Yorkville*, 796 F.3d 604, 608 (6th Cir. 2015). "At the summary judgment stage, the plaintiff must show that (1) the defendant violated a constitutional right and (2) that right was clearly established." *Id.* We may consider these requirements in the order of our choosing. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). For the first prong, the plaintiff "must present evidence sufficient to create a genuine issue as to whether the defendant committed the acts that violated the law." *Simmonds v. Genesee Cnty.*, 682 F.3d 438, 444 (6th Cir. 2012) (citation omitted). "A right is clearly established when every reasonable official would have understood that what [she] is doing violates that right." *Reed v. Campbell Cnty.*, 80 F.4th 734, 742 (6th Cir. 2023) (cleaned up). "Though a plaintiff need not point to a case on all fours with the instant fact pattern to form the basis of a clearly established right, there must be a sufficiently analogous case (or cases) from which a reasonable official would understand that what he is doing violates that right." *Pleasant View Baptist Church v. Beshear*, 78 F.4th 286, 295 (6th Cir. 2023) (cleaned up).

A.  Procedural Due Process

Kosch asserts that Berck and TCAPS violated her right to due process in their handling of the investigation into the complaint lodged against her.[3]  The Fourteenth Amendment prohibits state actors from depriving an individual of life, liberty, or property without due process of law. U.S. Const. amend. XIV, § 1.  To establish a procedural-due-process claim under § 1983, a plaintiff must show that (1) she had a protected interest, (2) she was deprived of that interest, and (3) the state did not afford her adequate process before the deprivation.  *EJS Properties, LLC v. City of Toledo*, 698 F.3d 845, 855 (6th Cir. 2012).

1. Deprivation of a Property Interest

On appeal, the parties do not dispute that Michigan's Teachers' Tenure Act, Mich. Comp. Laws §§ 38.71–38.191 ("MTTA") creates a protected property interest through its grant of "continuing tenure" for teachers in Michigan public schools.  They contest instead the second element—whether Berck deprived Kosch of her protected property interest in continuing tenure. To be sure, § 38.91 of the MTTA provides that a tenured teacher "shall not be dismissed or demoted except as specified in this act."  Mich. Comp. Laws § 38.91(1); *see also Town Of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005) (explaining that for purposes of the Due Process Clause, a property interest must be defined by "existing rules or understandings that stem from . . . state law") (cleaned up).  Relevant here, Kosch was neither dismissed nor demoted; she contends that she was deprived of her property interest in continuing tenure because she was constructively discharged.  And we have recognized, albeit in unpublished cases, that "[a] constructive discharge may constitute a deprivation of property within the meaning of the Fourteenth Amendment."  *Nunn*

---

[3] Qualified immunity is not available to municipal defendants, so we limit our analysis of this defense to Berck's conduct.  *See Pearson*, 555 U.S. at 242–43; *Moldowan v. City of Warren*, 578 F.3d 351, 392 (6th Cir. 2009).

*v. Lynch*, 113 F. App'x 55, 59 (6th Cir. 2004) (collecting out of circuit cases and one unpublished Sixth Circuit decision).

An employee may be considered constructively discharged when her "working conditions [are] so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Bohler v. City of Fairview*, 830 F. App'x 465, 468 (6th Cir. 2020) (quoting *Medlin v. City of Algood*, 814 F. App'x 7, 14 (6th Cir. 2020)). The employee must also demonstrate that the employer intended this result. *Daniels v. Williams*, 474 U.S. 327, 328 (1986) (recognizing that negligent or unintentional deprivation of property does not implicate the Due Process Clause). "There are two circumstances in which an employee's resignation will be deemed involuntary for due process purposes: 1) when the employer forces the resignation or retirement by coercion or duress, or 2) when the employer obtains the resignation or retirement by deceiving or misrepresenting a material fact to the employee." *Nunn*, 113 F. App'x at 60.

Kosch has not shown that Berck took any action intending to cause her resignation. First, the record does not support Kosch's assertion that Berck intentionally used coercion, duress, deception, or material misrepresentations to induce her resignation. Indeed, Berck followed standard protocol when she directed school administrators to suspend Kosch with pay, scheduled a fact-finding meeting to discuss the allegations raised against Kosch, provided Kosch with an opportunity to respond to those allegations, and assigned a union representative to defend Kosch's employment contract. And the "extreme" outcomes Berck discussed with Kosch were each contingent on events that were possible yet had not occurred.

Importantly, Berck's steps were both preliminary and non-disciplinary in nature. She told Kosch that no decision had been reached regarding her continued employment or about whether tenure charges would be recommended. And Kosch points us to no evidence suggesting that Berck

was anything but agnostic about how things might unfold. Indeed, Kosch testified that nothing "had been determined" as to any discipline at the October 27 meeting, as she knew there was merely a "chance that [disciplinary action] could happen." (R. 28-2, PageID 626, 630). Given these undisputed facts, no juror could reasonably conclude that Berck intentionally used coercion, duress, deception, or material misrepresentations to induce Kosch's resignation. *See Laster v. City of Kalamazoo*, 746 F.3d 714, 728–79 (6th Cir. 2014) (finding no genuine issue of material fact as to constructive discharge in employment-discrimination claim where employer had "not directly told" plaintiff "that he would be terminated at the pre-determination hearing").

Kosch resists this conclusion—insisting that "special aggravating circumstances" show that Berck made Kosch's working conditions so intolerable that she had no choice but to resign. These circumstances, Kosch says, include Berck's (1) misrepresentation that TCAPS's policy barred Kosch from having an attorney present during the October 27 meeting; (2) assignment of McBride-Culver as Kosch's union representative during the October 27 meeting, when she knew that McBride-Culver intended to file a grievance against Kosch on behalf of another TCAPS teacher; (3) use of the recorded video as a means to intimidate and harass Kosch; and (4) misrepresentation that Kosch had violated the FERPA which could result in termination and hinder Kosch's future job prospects. However, the district court considered each of these so-called "special aggravating circumstances," and properly concluded that none raised a genuine issue of material fact as to whether Berck intentionally made Kosch's working conditions intolerable. First, Kosch faults Berck for rejecting her request to bring an attorney to their initial meeting when there is no written policy prohibiting attorney attendance. But regardless of whether TCAPS had any such policy, the record does not suggest that Berck rejected that request out of a purpose of depriving Kosch of her property rights. Instead, Berck advised Kosch that she was free to consult

with her attorney on her own time (e.g. before or after the meeting). Here, the purpose of the October 27 meeting was straightforward and involved relatively low stakes. There is no dispute that Berck scheduled the meeting to collect information—not to issue discipline.

Second, Kosch's claim that Berck deceptively enlisted McBride-Culver to represent her despite a so-called conflict of interest fails the timeline test. Kosch offers no evidence that Berck knew of any potential conflict of interest when she suggested that McBride-Culver attend the October 27 meeting. And the record belies this point; it shows that McBride-Culver notified Berck about her intention to file a hostile-work-environment grievance on behalf of another teacher on *October 28, 2020*—the day after Kosch resigned. It is therefore inappropriate to ascribe knowledge of any conflict to Berck on this basis. Moreover, Kosch does not suggest that Berck's enlistment of McBride-Culver strayed in any way from TCAPS's collective bargaining agreement with the union. In fact, Kosch "wasn't opposed to having her there" and does not suggest that McBride-Culver took any actions during the meeting that influenced her decision to quit. (Kosch Dep., R. 24-10, PageID 388).

Third, no factfinder could reasonably conclude that Berck used the recorded video to "intimidate" Kosch. Kosch asserts that if she had "known that the recording was illegally obtained, [she] would not have been forced to resign." (R. 28-5, PageID 908). But whether L.H. or others violated state eavesdropping laws in recording and sharing the video—a matter on which we need not opine—is not relevant here. Kosch acknowledges that Berck (and TCAPS) neither produced nor disseminated the video. Kosch likewise acknowledges that Berck had a duty to investigate the video once it was brought to her attention. There is no suggestion that Berck used the video in an improper manner during the investigation. Indeed, when Berck asked Kosch whether she wanted to view the video during the October 27 meeting, Kosch declined and Berck respected her wishes.

Finally, Kosch's suggestion that Berck told her that she violated the FERPA and that her pension and future employment prospects were in jeopardy is not supported by the record. Rather, by Kosch's own testimony, Berck explained outcomes that were possible in the event that the investigation led to tenure charges. When Kosch resigned, however, Berck was still investigating the matter. There was no recommendation for tenure charges and no decision regarding her conduct. Berck's testimony, which Kosch cites in support of her argument, corroborates this fact: "I wanted first to understand what [had] occurred before making a determination whether there was a violation or not." (R. 28-3, PageID 713). Kosch resigned before Berck could make this determination. Kosch's misunderstanding about the risk for termination occasioned by a FERPA violation does not show that Berck deceived her into believing that her employment and pension were in jeopardy. (R. 20, PageID 44); *see Leheny v. City of Pittsburgh*, 183 F.3d 220, 228 (3rd Cir. 1999) (finding that the plaintiffs' misunderstanding about the provision of a supplemental agreement concerning their early retirement did not establish that the city's retained independent agency had materially misrepresented the contents of that provision); *see also Nunn*, 113 F. App'x at 60.

Because Kosch has raised no triable issue as to whether Berck intentionally coerced or deceived Kosch into resigning, this court must conclude that Kosch did so voluntarily. *Nunn*, 113 F. App'x 55, 59 (6th Cir. 2004) ("Employee resignations and retirements are presumed to be voluntary."). Having failed to establish a deprivation through constructive discharge, Kosch's due-process claim necessarily fails. She therefore cannot satisfy her burden under qualified immunity's first prong.

2.    Clearly Established Law

Separately, even if Kosch established that she was deprived of her continuing tenure, she has not met her burden under qualified immunity's clearly-established-law prong. "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what [she] is doing violates that right." *Williams v. Maurer*, 9 F.4th 416, 437 (6th Cir. 2021) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)).  As such, "[t]o be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent." *Id.* (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018)).  "[I]t is only in extraordinary cases that we can look beyond Supreme Court and Sixth Circuit precedent to find 'clearly established law.'" *Walton v. City of Southfield*, 995 F.2d 1331, 1336 (6th Cir. 1993), *superseded by statute on other grounds as recognized in Livermore ex rel. Rohm v. Lubelan*, 476 F.3d 397, 407–08 (6th Cir. 2007).

Kosch offers no precedential caselaw to show that a reasonable official would be on notice that any of Berck's challenged conduct deprived Kosch of her continued employment through constructive discharge.  This failing is terminal.  *See Arrington-Bey v. City of Bedford Heights*, 858 F.3d 988, 993 (6th Cir. 2017) (noting that qualified immunity's clearly-established-law inquiry may "begin with, and could end with, the reality that [the plaintiff] points to no Supreme Court or Sixth Circuit case" establishing a particular legal principle).  Kosch points to no case, let alone, clearly established law indicating that she was entitled to legal representation at her initial investigatory meeting with Berck or that the absence of such representation constitutes intolerable working conditions.  Likewise, Kosch provides no case establishing that an employer, who unwittingly assigns a conflicted union representative to defend an employee's contract during a

preliminary investigation, works a deprivation of the employer's property interest. As to the remaining special circumstances, Kosch directs us to Michigan law and out-of-circuit cases to support her assertions that Berck's consideration of the recorded video and alleged misrepresentations about her employment outcomes forced her to resign. But these authorities have no precedential value and are distinguishable in any event.[4] They are therefore insufficient to demonstrate clearly established law and, by extension, to defeat Berck's claim of qualified immunity.

IV.

Kosch's due-process claim against TCAPS fares no better. Plaintiffs may file a § 1983 action only against a "person who . . . causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. When the "person" is a municipality or a local governmental entity such as TCAPS, the entity "may not be held liable under § 1983 on a *respondeat superior* theory—in other words, '*solely* because it employs a tortfeasor.'" *D'Ambrosio v. Marino*, 747 F.3d 378, 388–89 (6th Cir. 2014) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)). Rather, a plaintiff must show that "through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." *Alman v. Reed*, 703 F.3d 887, 903 (6th Cir. 2013) (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997)). A plaintiff does so by showing that the municipality or local

---

[4] Kosch submitted two supplemental citations, *Spreen v. Brey*, 961 F.2d 109 (7th Cir. 1992) and *Scharf v. Dep't of the Air Force*, 710 F.2d 1572 (Fed. Cir. 1983), to bolster her argument that an employer's misrepresentations about a particular fact, including loss of pension or benefits, may support a finding of constructive discharge. But by failing to raise these 30 and 40 year old out-of-circuit precedents to the district court or in his initial briefs on appeal, Kosch has forfeited the argument. *See United States v. White*, 920 F.3d 1109, 1114 (6th Cir. 2019) In any event, because these cases are out-of-circuit, they do not show that Berck's conduct violated clearly established law. And we are not convinced that the facts here present an "extraordinary case" that warrants such treatment. *See Walton*, 995 F.2d at 1342.

governmental entity had a policy or custom that caused the violation of her rights. *Monell*, 436 U.S. at 684. There are four ways a plaintiff can establish that a municipality's policy or custom caused her constitutional violation: she may show "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiesces of federal rights violations." *Jackson v. City of Cleveland*, 925 F.3d 793, 828 (6th Cir. 2019).

Kosch has not asserted a cognizable due-process claim against TCAPS. She does not argue that the school district used any of these four methods to deprive her of her tenured employment. In fact, she affirmatively denies the existence of a policy denying attorney representation and points to no policy relating to the other "special circumstances" supporting her claim. Moreover, even if she had asserted any of the four methods described above, her claim would still fail because the evidence does not support an underlying violation of her due-process rights. *See Baynes v. Cleland*, 799 F.3d 600, 622 (6th Cir. 2015) ("Without an underlying unconstitutional act, [the plaintiff's] claim against the County under § 1983 must also fail."). Therefore, her claim against TCAPS necessarily fails.[5]

V.

For the above reasons, we AFFIRM.

---

[5] Because Kosch's claims against Berck and TCAPS fail on other grounds, we need not address her challenge to the district court's conclusion that Kosch failed to exhaust certain administrative remedies outlined by the collective bargaining agreement between TCAPS and the union.